*223 REBECCA GRASSL BRADLEY, J.
¶ 1. We review a published opinion of the court of appeals,[1] which determined that use of a deceased police officer's recorded statements at a suppression hearing[2] did not violate Glenn T. Zamzow's rights under the Confrontation Clause of the Sixth Amendment or the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We hold that the Confrontation Clause protects a defendant's right to confrontation at trial but not at suppression hearings, and admission of the deceased officer's recorded statements during the suppression hearing did not deprive Zam-zow of due process. We therefore affirm.
I. BACKGROUND
¶ 2. Officer Craig Birkholz of the Fond du Lac Police Department stopped Zamzow's car early on a Sunday morning after observing the car cross the center line. During the stop, Zamzow smelled of intoxicants and admitted to drinking alcohol. Officer Curt Beck arrived on the scene with a third officer to assist Birkholz. The officers arrested Zamzow, and the State charged him with operating while intoxicated and operating with a prohibited alcohol concentration, both as third offenses.[3] Zamzow filed a motion to suppress all evidence obtained during the stop, claiming Birk-holz lacked reasonable suspicion. Before the court could hold a suppression hearing, Birkholz died.
¶ 3. With Birkholz unavailable to testify at the suppression hearing, the State instead relied on a *224 recording of the stop, as well as testimony by Beck and a computer forensic specialist from the police department, to establish reasonable suspicion. The computer forensic specialist first testified about recordings from cameras mounted on the two squad cars involved in the stop. He testified that he prepared a DVD containing the dashboard camera video from each car. Next, Beck explained his role in assisting with the stop. He acknowledged watching the DVD with the dashboard camera videos, and he confirmed that the recording produced by his own car's camera fairly and accurately depicted the stop as he remembered it. Additionally, he confirmed that the dashboard camera video from Birk-holz's car fairly and accurately depicted the events Beck personally observed, and verified that the video consisted of a continuous and uninterrupted segment.
¶ 4. Based on the two officers' testimony—and over defense counsel's objection to the impossibility of cross-examining Birkholz about his reasons for initiating the stop—the circuit court allowed the State to introduce the video from Birkholz's car, which the court viewed. After hearing arguments from Zamzow's counsel and from the State, the court took the suppression motion under advisement in order to further review the video. While watching the video again in chambers, the circuit court discovered that the recording included audio, which had not accompanied the video at the suppression hearing. The court ordered a second suppression hearing so the audio accompanying the video could be played on the court record.
f 5. At the second suppression hearing, the court heard the initial statement Birkholz made to Zamzow after initiating the stop: "Officer Birkholz, city police. The reason I stopped you is you were crossing the center line there coming at me and then again when I *225 turned around and got behind you." The court also heard audio in which Birkholz explained his basis for the stop to the arriving officers.[4] Zamzow's counsel objected to admission of both audio statements, arguing that the inability to cross-examine Birkholz denied Zamzow his right to confront a witness against him.
¶ 6. The circuit court denied Zamzow's suppression motion and made the following findings of fact:
[O]n Sunday night, March 13th, at 3:04 a.m. or thereabouts, the officer in this case, deceased Officer Birk-holz, did make an observation that the defendant had crossed the center line on Johnson Street as he was approaching the Johnson street bridge from the east traveling west. The officer turned around, stopped the vehicle, and has testified that the vehicle crossed the center line again as it was going over the Johnson Street bridge.
From the video, the court could not "discern in any fashion . . . whether a cross of the center line occurred prior to the two vehicles crossing paths," and the court added that it was "difficult from the video to discern whether the defendant's vehicle actually crossed the center line as it was going over the bridge." Focusing instead on the statement Birkholz made to Zamzow, the court concluded, "[T]he . . . testimony that the vehicle did, in fact, cross the center line twice in that short amount of time" provided a "sufficient basis for the officer to have made a stop for further inquiry."
¶ 7. On Zamzow's motion for reconsideration, the circuit court clarified its decision. Relying on State v. Frambs, 157 Wis. 2d 700, 460 N.W.2d 811 (Ct. App. 1990), the court concluded that the Confrontation *226 Clause does not apply at a suppression hearing. The court added that, even if the Confrontation Clause does apply at suppression hearings, Birkholz's statement to Zamzow was nontestimonial and therefore admissible.
¶ 8. Zamzow proceeded to trial, and a jury convicted him on both counts. At trial, the jury did not hear the audio recording of Birkholz's statement. After the circuit court denied Zamzow's motion for postcon-viction relief, he appealed and the court of appeals affirmed. State v. Zamzow, 2016 WI App 7, ¶ 1, 366 Wis. 2d 562, 874 N.W.2d 328. The court of appeals agreed with the circuit court that "the Confrontation Clause simply does not apply to pretrial hearings such as the suppression hearing at issue in this case." Id., ¶ 11. Emphasizing United States Supreme Court precedent suggesting the right to confrontation is a trial right, the court rejected Zamzow's contention that Crawford v. Washington, 541 U.S. 36 (2004), undermined Frambs and extended the confrontation right to pretrial proceedings. Id., ¶¶ 10-11. Additionally, the court of appeals rejected Zamzow's claim, first raised in his postconviction motion, that admitting the audio statements denied him due process of law. Id., ¶ 16. In particular, the court of appeals relied on United States v. Matlock, 415 U.S. 164 (1974), and United States v. Raddatz, 447 U.S. 667 (1980), to conclude that "the Supreme Court has, at a minimum, intimated that admission at a pretrial suppression hearing of hearsay statements where the declarant cannot be cross-examined does not present a due process problem." Zamzow, 366 Wis. 2d 562, ¶ 13.
f 9. Zamzow filed a petition for review, which we granted.
*227 II. STANDARD OF REVIEW
¶ 10. Ordinarily, the decision whether to admit evidence is within the circuit court's discretion. State v. Griep, 2015 WI 40, ¶ 17, 361 Wis. 2d 657, 863 N.W.2d 567 (citing State v. Deadwiller, 2013 WI 75, ¶ 17, 350 Wis. 2d 138, 834 N.W.2d 362). Whether the admission of evidence violates a defendant's rights under the Confrontation Clause of the Sixth Amendment presents a question of law, which this court reviews de novo. Id. (citing Deadwiller, 350 Wis. 2d 138, ¶ 17). "Whether a defendant's right to due process was violated also presents a question of law that we review de novo." State v. McGuire, 2010 WI 91, ¶ 26, 328 Wis. 2d 289, 786 N.W.2d 227.
III. ANALYSIS
A. The Confrontation Right
¶ 11. The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him. . . ." In Pointer v. Texas, 380 U.S. 400 (1965), the Supreme Court held that the Sixth Amendment's Confrontation Clause applies to the states through the Due Process Clause of the Fourteenth Amendment. Id. at 403, 405.[5]
¶ 12. Zamzow contends the Sixth Amendment right to confrontation "[i]n all criminal prosecutions" guarantees a right to confront the witnesses against *228 him at suppression hearings. Although he acknowledges the Supreme Court has never directly addressed the question, he argues the Court assumed the Confrontation Clause applies at a suppression hearing in McCray v. Illinois, 386 U.S. 300 (1967).[6] He also draws analogies to the Court's decisions regarding other Sixth Amendment rights, noting the Public Trial Clause applies at suppression hearings, Waller v. Georgia, 467 U.S. 39, 46-47 (1984), and the Counsel Clause applies at preliminary hearings, Coleman v. Alabama, 399 U.S. 1, 9-10 (1970). Emphasizing the Court's relatively recent overhaul of its Confrontation Clause jurisprudence in Crawford, Zamzow asserts that evidence presented at suppression hearings should also be subject to the Confrontation Clause's guaranteed procedural mechanism for scrutinizing witness testimony.
¶ 13. In recent years, Crawford and its progeny initiated a reassessment of the nature of the Confirm *229 tation Clause's protections. See Crawford, 541 U.S. at 61 ("To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee."). By contrast, Zamzow presents a different question here, asking not what the Confrontation Clause protects but when its protections apply. To answer Zamzow's question, we begin with the text of the Sixth Amendment and, building on the historical analyses in Crawford, examine the Confrontation Clause's meaning at the time of its adoption.
¶ 14. On its face, the Sixth Amendment's introductory phrase "[i]n all criminal prosecutions" seems to speak in broad terms, and early English dictionaries provide little guidance regarding the scope of "prosecutions" during the Framing era. Samuel Johnson's dictionary defined a "prosecution" as a "[s]uit against a man, in a criminal cause." 2 Samuel Johnson, A Dictionary of the English Language (London 1756). Noah Webster provided a more comprehensive definition: "the process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment." 2 Noah Webster, An American Dictionary of the English Language (New York, S. Converse 1828). Although both definitions contemplate a formal process for pursuing criminal charges, neither delineates the specific procedures used to determine guilt or innocence. Consequently, the Sixth Amendment's text does not alone provide precise insights into the applicability of the Confrontation Clause during particular stages of a criminal proceeding.
¶ 15. Accordingly, because "[t]he founding generation's immediate source of the [right to confront one's accusers] . . . was the common law," Crawford, 541 U.S. at 43, we also look to the common law to guide our understanding of the Confrontation Clause's *230 meaning. See Mattox v. United States, 156 U.S. 237, 243 (1895) ("We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted . . . ."). Blackstone extolled the virtues of confrontation in his discussion of "the nature and method of the trial by jury." 3 William Blackstone, Commentaries on the Laws of England 349 (Philadelphia 1772) (emphasis omitted). He explained that "the confronting of adverse witnesses" affords an "opportunity of obtaining a clear discovery" of the underlying truth of the matter at issue. Id. at 373. Unlike a "private and secret examination taken down in writing before an officer" and later read at trial, the "examination of witnesses viva voce"[7] provides a superior mechanism for achieving the trial's primary aim: "the clearing up of truth" in the presence of the jury. Id. Absent from Blackstone's commentary was any indication the common law right to confront witnesses existed at any stages preceding the trial. See 4 id. at 317-57.
¶ 16. In Mattox v. United States, 156 U.S. 237 (1895), one of the Supreme Court's earliest opinions discussing the Confrontation Clause, the Court described the common law right in a manner consistent with Blackstone's articulation:
The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits .. . being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the con *231 science of the witness, but of compelling him to stand face to face with the jury ....
Id. at 242. Like Blackstone, the Court emphasized the trial-oriented protection afforded by the right to confrontation of witnesses, which guarantees the "personal presence of the witness before the jury." Id. at 243.[8]
¶ 17. As criminal procedure evolved over the past century to include various pretrial proceedings, the Supreme Court addressed questions about non-trial criminal hearings and their relationship to procedural guarantees mandated by the Constitution. In particular, suppression hearings have become an important stage in many criminal cases since the Supreme Court adopted the exclusionary rule in Weeks v. United States, 232 U.S. 383 (1914).[9] When examining *232 the intersection of constitutional requirements and non-trial proceedings, the Court identified a "difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt." Brinegar v. United States, 338 U.S. 160, 174 (1949). At a criminal trial, traditionally before a jury, "[g]uilt. . . must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard." Id. (emphasis added). Probable cause, in contrast, implicates only "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id. at 175.
¶ 18. When discussing the government's privilege not to reveal the identity of a confidential informant, the Supreme Court relied on this distinction between proof at trial—where a defendant's guilt or innocence is at stake—and proof at a suppression hearing. In McCray v. Illinois, 386 U.S. 300 (1967), the Court explained it never held that, as an evidentiary principle, "an informer's identity need always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause for an arrest or search." Id. at 312. Faced with an undeveloped challenge to an unidentified informant's absence from a suppression hearing, the Court succinctly noted, "Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront a witness against him, because the State did not produce the informant to testify against him. This *233 contention we consider absolutely devoid of merit." Id. at 313-14 (emphasis added) (quoting Cooper v. California, 386 U.S. 58, 62 n.2 (1967)). Where testimony by the arresting officers at the suppression hearing was sufficient to establish probable cause for the arrest and resultant search, id. at 304, the confidential informant's absence did not violate the Sixth Amendment.[10]
¶ 19. Elsewhere, the Court made more explicit the connection between criminal trials and the Sixth Amendment's guarantee of confrontation and cross-examination. Four members of the Court endorsed a concise statement on the matter in Pennsylvania v. Ritchie, 480 U.S. 39 (1987): "[T]he right to confrontation is a trial right. .. ." Id. at 52 (plurality). In California v. Green, 399 U.S. 149 (1970), the Court declared, "[I]t is [the] literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause ...." Id. at 157. Earlier, in Barber v. Page, 390 U.S. 719 (1968), the Court described a clear connection between the confrontation right and particular stages of a criminal case:
The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial.
Id. at 725.
*234 ¶ 20. Consistent with the Supreme Court's implicit and explicit characterizations of the Confrontation Clause, this court recently held that "[o]ur case-law establishes that the Confrontation Clause does not apply to preliminary examinations." State v. O'Brien, 2014 WI 54, ¶ 30, 354 Wis. 2d 753, 850 N.W.2d 8 (first citing State ex rel. Funmaker v. Klamm, 106 Wis. 2d 624, 634, 317 N.W.2d 458 (1982)); then citing State v. Oliver, 161 Wis. 2d 140, 146, 467 N.W.2d 211 (Ct. App. 1991); and then citing State v. Padilla, 110 Wis. 2d 414, 422, 329 N.W.2d 263 (Ct. App. 1982)). The primary case on which this court relied explained that the "purpose of a preliminary hearing is quite different from a trial" because "the defendant's guilt need not be proven beyond a reasonable doubt." Funmaker, 106 Wis. 2d at 634.
¶ 21. Wisconsin is not alone in interpreting the Confrontation Clause as protecting a trial right; numerous state and federal courts agree. Peterson v. California, 604 F.3d 1166, 1169-70 (9th Cir. 2010) ("[T]he right to confrontation is basically a trial right. . . . Accordingly, Crawford does not affect the . . . Supreme Court cases holding that the Confrontation Clause is primarily a trial right."); Whitman v. Superior Court, 820 P.2d 262, 271 (Cal. 1991) ("[T]he United States Supreme Court has repeatedly stated that '[t]he right to confrontation is basically a trial right.' " (quoting Barber, 390 U.S. at 725)); Blevins v. Tihonovich, 728 P.2d 732, 734 (Colo. 1986) (en banc); Leitch v. Fleming, 732 S.E.2d 401, 404 (Ga. 2012); People v. Blackman, 414 N.E.2d 246, 247-48 (Ill. App. Ct. 1980); State v. Sherry, 667 P.2d 367, 376 (Kan. 1983) ("The Sixth Amendment right of confrontation is a protection that exists at the trial of the defendant."); Oakes v. Commonwealth, 320 S.W.3d 50, 55 (Ky. 2010) ("[T]he *235 U.S. Supreme Court has never held that the right to confront witnesses applies to pre-trial hearings. In fact, to the contrary, it has repeatedly described the right as a trial right."); State v. Daly, 775 N.W.2d 47, 66 (Neb. 2009) ("[I]t is well established that Confrontation Clause rights are trial rights that do not extend to pretrial hearings in state proceedings."); Sheriff v. Witzenburg, 145 P.3d 1002, 1004 (Nev. 2006) ("[C]onfrontation has historically been described as a trial right."); State v. Lopez, 2013-NMSC-047, ¶ 2, 314 P.3d 236 ("[T]he right of confrontation . . . applies only at a criminal trial where guilt or innocence is determined."); Commonwealth v. Tyler, 587 A.2d 326, 328 (Pa. Super. Ct. 1991) ("[T]he right to confrontation is a trial right."); State v. Timmerman, 2009 UT 58, ¶ 11, 218 P.3d 590 ("Barber, Green, and Ritchie establish Supreme Court precedent confining the Sixth Amendment Confrontation Clause to trial.").
f 22. Although we now address, for the first time, whether the Confrontation Clause applies at suppression hearings,[11] courts in other states have already tackled the question in the post-Crawford era. The New Mexico Supreme Court presents a representative example, holding that "the Confrontation Clause does not apply to preliminary questions of fact elicited at a *236 suppression hearing." State v. Rivera, 2008-NMSC-056, ¶ 13, 192 P.3d 1213. That court relied on Ritchie and Barber when explaining, "[T]he United States Supreme Court has held that a defendant's right to confront witnesses against him is primarily a trial right, not a pretrial right." Id., ¶¶ 13-14. The court added, "A trial focuses on the ultimate issue of an accused's guilt or innocence, whereas in a pretrial hearing the focus is generally on the admissibility of evidence." Id., f 15. Recognizing the continued validity of that distinction in Supreme Court jurisprudence, the court emphasized that "recent cases continue to focus on the protections afforded a defendant at trial." Id., f 18 (first citing Giles v. California, 554 U.S. 353, 357-58 (2008); then citing Crawford, 541 U.S. at 68).
¶ 23. Other courts reached similar conclusions. See, e.g., People v. Felder, 129 P.3d 1072, 1073-74 (Colo. App. 2005) (observing that "[n]othing in Crawford suggests that the Supreme Court intended to alter its prior rulings allowing hearsay at pretrial proceedings, such as a hearing on a suppression motion challenging the sufficiency of a search warrant," and reasoning that "had the Court intended the rule of Crawford to apply at the pretrial stage, it would have revisited its prior decisions refusing to recognize a Sixth Amendment right of pretrial confrontation"); State v. Woinarowicz, 2006 ND 179, ¶ 11, 720 N.W.2d 635 ("In Crawford, the United States Supreme Court did not indicate it intended to change the law and apply the Confrontation Clause to pretrial hearings. . . . The Sixth Amendment right to confrontation is a trial right, which does not apply to pretrial suppression hearings."); Vanmeter v. State, 165 S.W.3d 68, 74-75 (Tex. App. 2005) ("Crawford did not change prior law that the constitutional right of confrontation is a trial *237 right, not a pretrial right.... We hold, therefore, that Crawford does not apply at pretrial suppression hearings."); see also Ebert v. Gaetz, 610 F.3d 404, 414 (7th Cir. 2010) ("[T]he court considered the statement at a suppression hearing, not. . . trial; the Confrontation Clause was not implicated." (citing United States v. Harris, 403 U.S. 573, 584 (1971) (plurality))); State v. Watkins, 190 P.3d 266, 270-71 (Kan. Ct. App. 2007); State v. Harris, 2008-2117 (La. 12/19/08), 998 So. 2d 55 (per curiam); State v. Williams, 960 A.2d 805, 819-20 (N.J. Super. Ct. App. Div. 2008); People v. Mitchell, 2 N.Y.S.3d 207, 209-10 (App. Div. 2015); State v. Brown, 2016-Ohio-1258, 61 N.E.3d 922, ¶¶ 13-15 (Ct. App., 2d Dist.); State v. Fortun-Cebada, 241 P.3d 800, ¶ 41 (Wash. Ct. App. 2010).
¶ 24. We agree with those jurisdictions in concluding that the Confrontation Clause does not apply during suppression hearings. At common law, the right to confront witnesses developed as a mechanism for assessing witness reliability in the presence of the fact-finder, and several decisions by the Supreme Court indicate the confrontation right protects defendants at trial—when guilt or innocence is at stake. See Ritchie, 480 U.S. at 52 (plurality); Green, 399 U.S. at 157; Barber, 390 U.S. at 725; Brinegar, 338 U.S. at 174-75. Presenting live witnesses at a suppression hearing undoubtedly strengthens testimony offered by the State,[12] but when cross-examination of a witness *238 becomes impossible, the Confrontation Clause does not prohibit use of valuable evidence, such as the video at issue here.
¶ 25. It is important to recognize the dissimilarity between the inquiry at trial and the inquiry at suppression hearings: while the purpose of a trial is to ascertain a defendant's guilt or innocence, the function of a suppression hearing is to determine whether the police violated the defendant's constitutional rights. In McCray, the Supreme Court explained that the suppression hearing implicates a lesser concern than the trial itself:
We must remember. . . that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the truth. The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment. If the motion to suppress is denied, defendant will still be judged upon the untarnished truth.
386 U.S. at 307 (citation omitted) (quoting State v. Burnett, 201 A.2d 39, 44 (N.J. 1964)). The proceedings here reveal the gulf between these inquiries. Although the circuit court did consider Birkholz's statement *239 when evaluating reasonable suspicion, the jury that actually convicted Zamzow at trial never heard the audio recording. Birkholz's statement itself played no part in the determination of guilt or innocence. Zam-zow was "judged upon the untarnished truth." Id.
¶ 26. While the Supreme Court has applied the Public Trial and Counsel Clauses of the Sixth Amendment to certain pretrial hearings, Waller v. Georgia, 467 U.S. 39 (1984); Coleman v. Alabama, 399 U.S. 1 (1970), tellingly, it has not done so with respect to the Confrontation Clause. Cases holding that the Public Trial and Counsel Clauses apply during pretrial proceedings base their conclusions on the nature of the rights those clauses protect. See Waller, 467 U.S. at 46-47; Coleman, 399 U.S. at 9-10 (plurality); id. at 11—12 (Black, J., concurring). Here, elevating suppression hearings to a level of constitutional significance on par with trials would contravene the clear distinction the Supreme Court has described between pretrial hearings and the trial itself for Confrontation Clause purposes. The Court never nullified that distinction in Crawford or any subsequent Confrontation Clause case, and we will not adopt such a construction here. Because the Court has made clear that the interests protected by the confrontation right specifically target the determination of guilt or innocence, the justifications underpinning application of the Public Trial and Counsel Clauses of the Sixth Amendment to pretrial proceedings do not logically attach to the Confrontation Clause.[13]
*240 ¶ 27. In light of the longstanding principle that the Confrontation Clause protects a trial right, we conclude the Confrontation Clause does not require confrontation of witnesses at suppression hearings. By-relying on Birkholz's recorded audio statement to make a reasonable suspicion determination, the circuit court did not deny Zamzow his right to confrontation under the Sixth Amendment.[14]
B. Due Process
¶ 28. The Fourteenth Amendment to the United States Constitution provides: "No state shall. . . deprive any person of life, liberty, or property, without due process of law . . . ." As an alternative to his Confrontation Clause argument, Zamzow contends the circuit court denied him due process of law at the suppression hearing by relying on the audio recording of Birkholz's statements without any possibility of cross-examination, quoting Goldberg v. Kelly, 397 U.S. 254, 269 (1970): "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."
*241 ¶ 29. We agree with the court of appeals that clear precedent from the Supreme Court undermines Zamzow's due process argument. In many of the Confrontation Clause cases discussed above, the Supreme Court also addressed alleged due process violations. Drawing those cases together, the Court explained that the distinction between trials and pretrial hearings applies in the due process context, too:
This Court. . . has noted that the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial. United States v. Matlock, 415 U.S. 164, 172—174 (1974); Brinegar v. United States, 338 U.S. 160, 172-174 (1949). Furthermore, although the Due Process Clause has been held to require the Government to disclose the identity of an informant at trial, provided the identity is shown to be relevant and helpful to the defense, Roviaro v. United States, 353 U.S. 53, 60-61 (1957), it has never been held to require the disclosure of an informant's identity at a suppression hearing. McCray v. Illinois, 386 U.S. 300 (1967). We conclude that the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself.
United States v. Raddatz, 447 U.S. 667, 679 (1980) (citation omitted). Any right to confrontation and cross-examination implicated by the Due Process Clause is therefore relaxed at a suppression hearing.
¶ 30. Ultimately, "due process is flexible and calls for such procedural protections as the particular situation demands." State v. Chamblis, 2015 WI 53, *242 ¶ 54, 362 Wis. 2d 370, 864 N.W.2d 806 (alteration omitted) (quoting Gilbert v. Homar, 520 U.S. 924, 930 (1997)). Here, Birkholz's death rendered him unavailable to testify at the suppression hearing. But testimony by Beck established that the recording from the dashboard camera on Birkholz's squad car accurately and continuously documented the portions of the stop observed by Beck. The audio portion of that same continuous recording captured a statement made by Birkholz to Zamzow before Beck's arrival on the scene. The circuit court's reliance on that hearsay statement did not offend the reduced standard for due process of law required at a suppression hearing.
IV. CONCLUSION
¶ 31. The right to confrontation arose at common law as a tool to test witness reliability at trial. With the advent of pretrial evidentiary hearings during the twentieth century, the Supreme Court has signaled that the right to confrontation persists as a trial protection and does not apply during pretrial proceedings. The Sixth Amendment guarantees that a defendant whose guilt or innocence is at stake at trial may employ the "greatest legal engine ever invented for the discovery of truth." Green, 399 U.S. at 158 (quoting 5 John Henry Wigmore, Evidence § 1367 (3d ed. 1940)). But the Sixth Amendment does not mandate that statements considered at a suppression hearing face the crucible of cross-examination. Nor does the Due Process Clause demand this. Accordingly, we conclude that the circuit court did not deny Zamzow his rights under the Sixth and Fourteenth Amendments to the Constitution by relying on an audio recording of a deceased officer's statement at the suppression hearing.
By the Court.—The decision of the court of appeals is affirmed.

 State v. Zamzow, 2016 WI App 7, 366 Wis. 2d 562, 874 N.W.2d 328.

 The Honorable Gary R. Sharpe, Fond du Lac County Circuit Court, presiding.

 See Wis. Stat. § 346.63(1)(a)-(b) (2011-12).

 In its reasonable suspicion determination, the court did not rely on Birkholz's statement to the arriving officers.

 Zamzow has not raised any argument that his right to confrontation differs under the Wisconsin Constitution, which provides that "[i]n all criminal prosecutions the accused shall enjoy the right... to meet the witnesses face to face." Wis. Const. art. I, § 7. "We have observed that [the Confrontation Clause and Wis. Const, art. I, § 7] are 'generally' cotermi *228 nous .. . ." State v. Rhodes, 2011 WI 73, ¶ 28, 336 Wis. 2d 64, 799 N.W.2d 850 (citing State v. Hale, 2005 WI 7, ¶ 43, 277 Wis. 2d 593, 691 N.W.2d 637).

 In support of this argument, Zamzow directs us to Professor LaFave's Search and Seizure, which asserts, "It should not be assumed that the right of confrontation has no application at a Fourth Amendment suppression hearing, for such is not the case." 6 Wayne R. LaFave, Search and Seizure § 11.2(d), at 92 (5th ed. 2012). But see 3 Wayne R. LaFave et al., Criminal Procedure § 10.5(e), at 618 (4th ed. 2015) ("[D]efendant's right of cross-examination at the suppression hearing may be substantially narrower than that available at trial." (citing McCray v. Illinois, 386 U.S. 300 (1967))); cf. Nancy Hollander et al., Wharton's Criminal Procedure § 8:10, at 8—28 (14th ed. 2015) ("At the federal level, the defendant's right to confront a witness, embodied in the Sixth Amendment of the Constitution, was early held not to apply to the preliminary hearing." (footnote omitted)).

 "By word of mouth; orally. ... In reference to the examination of witnesses, the term means that oral rather than written testimony was taken." Viva Voce, Black's Law Dictionary 1804 (10th ed. 2014).

 We make no pretense of replicating Crawford's encyclopedic review of the Sixth Amendment's history, but the dissent faults the depth and breadth of our inquiry into the common law right of confrontation and the original public meaning of the Confrontation Clause. See Dissent ¶ 41 n.7, ¶ 49. As contrary evidence of historical meaning, however, the dissent cites two twenty-first century law review articles about confrontation at sentencing, two modern treatises, a 1924 case from this court, contradictory separate writings in Gannett Co. v. DePasquale, 443 U.S. 368 (1979), and a non-precedential 1974 dissent from denial of certiorari. Only the dissent's quotation from Joseph Chitty, A Practical Treatise on the Criminal Law (5th ed. 1847), even begins to offer any persuasive insight into common law practice at the time of the Sixth Amendment's framing. Although the dissent's authorities assuredly provide thoughtful commentary for any court reconciling the Sixth Amendment's protections with modern criminal procedure, after-the-fact analysis is no substitute for contemporaneous evidence when examining original meaning.

 Although the exclusionary rule originally applied only in federal criminal cases, the Supreme Court later held in Mapp *232 v. Ohio, 367 U.S. 643 (1961), that the exclusionary rule also applies in state criminal cases through the Due Process Clause of the Fourteenth Amendment.

 A few years later, the Court confirmed the Sixth Amendment implications of its decision in McCray, observing that it had "specifically rejected the claim that defendant's right to confrontation under the Sixth Amendment and Due Process Clause of the Fourteenth Amendment had in any way been violated." United States v. Matlock, 415 U.S. 164, 175 (1974).

 In State v. Frambs, 157 Wis. 2d 700, 460 N.W.2d 811 (Ct. App. 1990), the court of appeals observed that it saw "no evidence that the Supreme Court intended the protection of the confrontation clause to be available to a defendant in . . . pretrial situations." Id. at 704. The statement arose during an analysis based on Ohio v. Roberts, 448 U.S. 56 (1980), which the Supreme Court overruled in Crawford v. Washington, 541 U.S. 36 (2004). Any effect on Frambs following Crawford's overruling of Roberts is irrelevant for our purposes here, as we conduct an independent, comprehensive review of the applicability of the Confrontation Clause at suppression hearings.

 We therefore do not share the concern, articulated by the dissents both here and at the court of appeals, that our holding will reduce suppression hearings "to a paper review in which trial courts read police reports and review evidence such as dash cam videos to determine whether a warrantless search or seizure was nevertheless lawful." Dissent, ¶ 85 (quoting Zam *238 zow, 366 Wis. 2d 562, ¶ 22 (Reilly, J., dissenting)). Because of the weight live testimony carries when it emerges intact from the gauntlet of cross-examination, a prosecutor has no incentive to intentionally weaken the State's own case by failing to bring an available witness before the court to defend against a defendant's suppression motion.

 Accusing us of placing form ahead of substance, the dissent insists that "the temporal factor does not control" whether the Confrontation Clause applies. Dissent, ¶¶ 51-52. We agree. As demonstrated by our review of historical evidence and Supreme Court decisions, we choose to join other jurisdic *240 tions in holding that the confrontation right is a trial right not out of "cursor[y] reliance] on.. . references to 'at trial' in United States Supreme Court cases," dissent, ¶ 48, but because we are persuaded that the confrontation right applies to testimony before a finder of fact weighing the ultimate question of a defendant's guilt or innocence.

 Because we conclude the Confrontation Clause did not require confrontation at the suppression hearing, we need not determine whether Birkholz's statement was testimonial.