COURT OF APPEALS
DECISION
DATED AND FILED

September 6, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP18-FT**

STATE OF WISCONSIN

Cir. Ct. No. 2021GN21

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE GUARDIANSHIP OF C. W.:

PRICE COUNTY,

   PETITIONER-RESPONDENT,

 V.

C. W.,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Price County: KEVIN G. KLEIN, Judge. *Affirmed*.

¶1    STARK, P.J.[1]  Clara[2] appeals from an order for her protective placement under WIS. STAT. § 55.08(1).  She argues that Price County failed to

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

(continued)

prove by clear and convincing evidence that she was in need of protective placement because it did not present testimony from a medical professional as to each element in § 55.08(1), and that the County's failure to do so violated her due process rights. We conclude that the relevant statutes do not require a medical professional to provide testimony in support of a petition for protective placement where, as here, a guardianship of Clara's person was ordered within twelve months of the protective placement hearing, the court took judicial notice of a medical professional's report and its findings and order from the guardianship proceeding, and a comprehensive evaluation was prepared in this matter pursuant to WIS. STAT. § 55.11 by a qualified individual. Accordingly, we affirm.

## BACKGROUND

¶2     In November 2021, Price County filed a petition for temporary and permanent guardianship of Clara. The County also filed a petition to have Clara protectively placed. As part of the guardianship proceedings, Dr. Nicholas Starr, a psychologist, examined Clara and filed a report with the circuit court in which he diagnosed her as having dementia and parasitosis. At the temporary guardianship hearing, the court received Starr's report into evidence, granted the temporary guardianship, appointed a guardian ad litem (GAL), and scheduled a jury trial.

¶3     Prior to trial, the parties reached a resolution. Pursuant to the parties' stipulation, the circuit court received Dr. Starr's examination report into evidence. Further, based upon Starr's report and the parties' agreement, the court

---

This is an expedited appeal under WIS. STAT. RULE 809.17.

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials.

found that Clara was incompetent and "impaired as a result of degenerative brain disorder" and ordered permanent guardianships of Clara's person and estate. The County withdrew its petition for protective placement, as the parties agreed that an attempt would be made to meet Clara's needs less restrictively at home. The County noted, however, that both parties believed "that at some time in the future," they would revisit Clara's need for protective placement.

¶4     In April 2022, the County refiled in the same case a second petition for Clara's protective placement. In May 2022, Beverly Albrecht, a certified social worker and investigator for Adult Protective Services, filed a comprehensive agency evaluation for Clara's protective placement on behalf of the Price County Department of Health and Human Services (the Department). To prepare the evaluation, Albrecht interviewed Clara's family members, an Aspirus Medford Hospital social worker, an Aspirus visiting nurse, and a Conservatorship Plus, LLC staff member; reviewed Clara's medical records from Aspirus Medford Hospital and Clinic; reviewed Price County Sheriff's Department's reports, photos, and a body camera video; visited Clara's current address, Price Electric, Prevail Bank, Medford Co-op, and a volunteer shopper who assisted Clara; and reviewed Inclusa Health Services staff correspondence.

¶5     In June 2022, the circuit court held a full due process hearing on the protective placement petition. Albrecht was the sole witness to testify at the hearing. She stated that she did not provide direct services to Clara but she met with her often "to keep tabs on her needs." She further testified that the prior petition for protective services was dismissed because the County had tried to give Clara "a chance to try to live at home with [the] guardianship and other services in place," and that the County filed a new petition because it determined the in-home services were insufficient to adequately care for Clara. Albrecht testified that

since the guardianship was ordered, Clara had received cleaning, nursing, grocery, and exterminator services while in her home. Albrecht stated that she was uncertain about the quality of Clara's nutrition while in her home but she mentioned that the grocery services ensured that Clara had access to healthy food.

¶6 Albrecht stated that despite these services, the Department still had concerns about Clara living alone for a variety of reasons: her house had a deteriorating substructure; her bathroom was nearly unusable; she burned bills and other items in a working fireplace that had not been inspected; she put bolts on her door without giving anyone a key; she fed the mice in her house like pets, leading to an infestation; she left food sitting out that gathered flies; and, once, the fire department was called because Clara left food burning on the stove and did not realize that she had done so. Clara also regularly called for police assistance despite there often being no genuine issue to report.

¶7 Albrecht testified that Clara was diagnosed with "parasitosis," a condition where Clara believes "parasites" or other "living things" are in her wounds causing her to "pick at [them] continuously, causing a larger and larger wound." Albrecht stated that Clara's most recent hospitalization was due to these "wound care issues."

¶8 Albrecht testified Clara also suffered from delusions—specifically, that a "bad man" named "Pocock" comes to her house and that Clara blames "the bad man" "for anything that isn't running smoothly," such as missing food, loud noises, and alleged digging under her home. According to Albrecht, Clara's delusions caused Clara "to isolate herself" to such an extent that, in the past, she had refused to open the door to her home.

¶9 Regarding her physical health, Albrecht testified that Clara is "fairly healthy" but again mentioned that Clara was recently hospitalized due to the infection of a "nasty" wound. Albrecht stated that she knew that Clara had diabetes, but she was unaware whether it was appropriately managed. Albrecht testified that Clara was currently not on any medications because she "refuses to take anything," but in the past Clara had been prescribed Seroquel to treat her delusions.

¶10 The circuit court sustained Clara's counsel's objection to Albrecht's testimony regarding the physical and mental conditions providing the basis for Clara's guardianship as lacking foundation. When asked if Clara's conditions were permanent, Albrecht answered that she believed they were, but Clara's counsel objected again based on a lack of foundation. The court overruled the objection, explaining that the court took "notice of the result"—i.e., the court's finding in the previous guardianship action that Clara's conditions were permanent.

¶11 Albrecht testified that prior to the current protective placement petition, Clara had been recently moved to a facility called Cranberry Court where she received twenty-four-hour supervision. According to Albrecht, this facility was the least restrictive environment for Clara and allows her to be "more active instead of isolated." Based upon her recent visit, Albrecht testified that Clara "appear[ed] much neater groomed" and was "dressed clean" since residing in Cranberry Court.

¶12 At the conclusion of Albrecht's testimony, Clara's counsel argued that the County failed to present sufficient evidence in support of her protective placement because it failed to present testimony from a medical professional. The

County responded that because the prior circuit court "made the determination back then that [Clara's] disability is … permanent or likely to be permanent," it was sufficient for the County to provide "someone who's intimately involved" with Clara to show "that there's been no changes in the last five, six months."

¶13 The circuit court found that the County had met its burden to prove that Clara met the standards for protective placement, based in part on the court's review of "necessary reports and documents on file." The court further found that Clara had a "primary need for residential care and custody" due to the "set of circumstances that do show significant danger, significant safety concerns, [and] significant lack of insight." The court noted that Clara was "adjudicated incompetent as of last December," which was "within the last 12 months, and there's been no evidence that that incompetency has disappeared." Clara's difficulties, the court found, "are a result of either degenerative brain disorder or other like incapacities," and they result in Clara "being totally incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself." Lastly, the court found Clara has "a disability that is permanent or likely to be permanent" and she resides in the least restrictive placement consistent with her needs. Clara now appeals.

## DISCUSSION

¶14 Clara argues that the County failed to meet its burden to prove by clear and convincing evidence that she is in need of protective placement. She claims that the County was required to present evidence from a medical professional regarding her medical needs as well as demonstrate that these needs created a basis for a protective placement order. She argues the County's failure to provide such evidence contradicts the statutory requirements in WIS. STAT.

6

ch. 55, the United States Constitution, and ***Walworth County v. Therese B.***, 2003 WI App 223, 267 Wis. 2d 310, 671 N.W.2d 377. She further asserts that the County's failure to call a medical professional deprived her of her right to cross-examine that professional on the required elements for protective placement, thereby violating her due process rights.

¶15 Our review of a protective placement order presents a mixed question of fact and law. This court will uphold the circuit court's factual findings unless they are clearly erroneous. WIS. STAT. § 805.17(2). "A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence." ***Metropolitan Assocs. v. City of Milwaukee***, 2018 WI 4, ¶62, 379 Wis. 2d 141, 905 N.W.2d 784. Whether the evidence supports protective placement is a question of law that we review de novo. ***Coston v. Joseph P.***, 222 Wis. 2d 1, 23, 586 N.W.2d 52 (Ct. App. 1998). Whether an individual's right to due process was violated also presents a question of law that we review de novo. ***State v. Zamzow***, 2017 WI 29, ¶10, 374 Wis. 2d 220, 892 N.W.2d 637.

¶16 WISCONSIN STAT. ch. 55 "provides for long-term care for individuals with disabilities that are permanent or likely to be permanent." ***Fond du Lac County v. Helen E.F.***, 2012 WI 50, ¶21, 340 Wis. 2d 500, 814 N.W.2d 179; *see also* WIS. STAT. § 55.08(1)(d). This statutory scheme is designed "to place the least possible restriction on personal liberty and exercise of constitutional rights consistent with due process." *See* WIS. STAT. § 55.001. An individual facing a possible protective placement is entitled to various rights at full due process hearings such as the right to counsel, a GAL, a jury trial, and "the right to present and cross-examine witnesses, including any person making an evaluation or review." *See* WIS. STAT. § 55.10(4)(a)-(c).

¶17    In order for an individual to be protectively placed, a petitioner must prove, by clear and convincing evidence, that:

> (a) The individual has a primary need for residential care and custody.
>
> (b) The individual is … an adult who has been determined to be incompetent by a circuit court.
>
> (c) As a result of developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities, the individual is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others. Serious harm may be evidenced by overt acts or acts of omission.
>
> (d) The individual has a disability that is permanent or likely to be permanent.

WIS. STAT. §§ 55.08(1), 55.10(4)(d). A "comprehensive evaluation" of the individual is also required "if such an evaluation has not already been made." WIS. STAT. § 55.11(1). Additionally, if an individual is "adjudicated incompetent … more than 12 months before the filing of an application for protective placement … on his or her behalf, the court shall review the finding of incompetency." WIS. STAT. § 55.075(3).

## I. Sufficiency of the evidence

¶18    Clara relies on *Therese B.* in support of her argument that the County failed to prove by clear and convincing evidence that she was in need of protective placement. She asserts *Therese B.* requires that in order to meet its burden of proof for protective placement, "the government must present a witness who is qualified by experience, training and independent knowledge of [the individual's] mental health to give a medical or psychological opinion on each" element. *Therese B.*, 267 Wis. 2d 310, ¶13. Clara concedes, however, that the

County was not required to present the testimony of a physician or psychologist and she states that the testimony of a nurse practitioner caring for Clara would have been sufficient. We conclude that the County met its burden of proof under the facts of this case.

¶19 The County first notes, and we agree, that *Therese B.* is distinguishable. *Therese B.* concerned both an initial guardianship and a protective placement. *Id.*, ¶¶2, 16. Because those petitions were heard together and a guardianship was sought, the witness in *Therese B.* was a psychologist appointed by the circuit court to provide the statutorily required report concerning Therese's mental condition. *Id.*, ¶3; *see also* WIS. STAT. § 54.36 (stating that an appointment of a guardian requires that "a physician or psychologist, or both" must "examine the proposed ward and furnish a written report stating the physician's or psychologist's professional opinion regarding the presence and likely duration of any medical or other condition causing the proposed ward to have incapacity").

¶20 In the present case, Clara had already been appointed a guardian, and only a protective placement order was at issue. As noted above, a medical opinion is required for the appointment of a guardian, *see* WIS. STAT. § 54.10(2)(b)2., but there is no such corresponding statutory requirement for a protective placement order.

¶21 Clara argues that the fact she was previously adjudged in need of a guardianship does not mean that she also requires protective placement. Clara is correct that a "finding of incompetency and appointment of a guardian … is not grounds for involuntary protective placement," and a "protective placement … may be made only in accordance with [WIS. STAT.] ch. 55." *See*

WIS. STAT. § 54.48. However, the circuit court here did not simply rely upon the prior guardianship order as the basis for Clara's protective placement. Instead, the court considered all of the evidence before it in determining that the County proved each element in WIS. STAT. § 55.08(1). This evidence included the petition, comprehensive evaluation, and Albrecht's testimony, together with the findings and orders entered in Clara's guardianship proceeding held five months earlier. *See* WIS. STAT. § 902.01 (allowing a court to take judicial notice of adjudicative facts).

¶22 Clara concedes that WIS. STAT. ch. 55 does not require a written report from a medical professional. She asserts, however, that this fact "doesn't mean that testimony from a medical professional isn't required at a contested protective placement proceeding." She argues that in a protective placement action, the circuit court "must make several findings relating to medical questions involving the individual's needs, capabilities and disability." Specifically, Clara argues that medical testimony is required for the court to determine whether "'a degenerative brain disorder … or other like incapacity' renders 'the individual … so totally incapable of providing for … her own care or custody as to create a substantial risk of serious harm to … herself or others,'" and whether "the individual has a disability that is permanent or likely to be permanent." While Clara correctly notes that the court must be presented with evidence on each of the elements required for a protective placement, we conclude that there was no need for testimony from a medical professional in this case in light of the findings and order entered in Clara's prior guardianship proceeding.

¶23 For Clara to be protectively placed, WIS. STAT. § 55.08(1)(a) required the County to prove that Clara has a primary need for residential care and custody. The circuit court found that Clara required residential care and custody

due to the "set of circumstances that do show significant danger, significant safety concerns, [and] significant lack of insight." Albrecht's testimony provided ample evidence in support of the court's findings, as Albrecht testified regarding the unsanitary and unsafe conditions in Clara's home, as well as Clara's isolation and delusions. Additionally, Albrecht discussed Clara's parasitosis which had recently resulted in a serious infection requiring hospitalization. Clara does not take issue with Albrecht's testimony or argue that the court's findings in this regard are clearly erroneous.

¶24 WISCONSIN STAT. § 55.08(1)(b) required the County to prove that Clara had been determined to be incompetent by a circuit court. The court properly took judicial notice of the incompetency finding it made in Clara's guardianship proceeding. *See* WIS. STAT. § 902.01(2), (3).

¶25 WISCONSIN STAT. § 55.08(1)(c) and (d) required the County to prove, in part, that Clara suffers from a permanent developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities. Again, the circuit court here properly took judicial notice of the finding in Clara's guardianship proceeding that she suffers from a permanent degenerative brain disorder or other like incapacity.

¶26 As to Clara's argument that the County was required to provide evidence from a medical professional in order to prove that her degenerative brain disorder renders her "so totally incapable of providing for … her own care as to create a substantial risk of serious harm to … herself or others," we again note that the circuit court relied upon its finding in the guardianship proceeding. In addition, the court properly relied upon Albrecht's testimony regarding Clara's limitations and needs since her guardianship was ordered. As noted above, this

included testimony regarding unsanitary and unsafe conditions in Clara's home, as well as her isolation and her continuing delusions, all of which the court found created a substantial risk of harm to Clara.

¶27 Clara does not question the accuracy of Albrecht's testimony regarding Clara's inability to care for herself, nor does she claim that Albrecht incorrectly stated that Clara's inability creates a substantial risk of harm to Clara. Instead, she appears to argue that the circuit court could not rely upon Albrecht's testimony because it was not provided by a medical professional. She fails, however, to develop an argument as to why Albrecht lacked sufficient foundation for her testimony or to explain what evidence should have been provided by a nurse practitioner that Albrecht did not offer.

¶28 In her reply brief, Clara argues that *J.C. v. R.S.*, No. 2022AP1215, unpublished slip op. ¶6 (WI App Feb. 16, 2023), provides that a "petitioner cannot meet its burden without presenting a witness qualified to give a medical or psychological opinion." However, *J.C.* is distinguishable. That case concerned a problem with the underlying guardianship, which is not at issue here. A prior guardianship in *J.C.* was based on the report of a physician's assistant, who did not have the requisite background to file a report for purposes of WIS. STAT. ch. 54. *J.C.*, No. 2022AP1215, ¶25. The circuit court overseeing the protective placement therefore could not rely on that report for the medical testimony necessary to show that the subject individual was incompetent. *Id.*, ¶¶25-26.

¶29 Here, in contrast, Clara's guardianship was ordered based upon the report of a psychologist. Clara stipulated to her guardianship order on the basis of that report only five months before her protective placement hearing. Therefore, in ordering Clara's protective placement, the circuit court could properly rely on

and take judicial notice of the order entered in the guardianship proceedings, in which the court had determined that Clara was incompetent, that she had a degenerative brain disorder, that her condition was permanent or was likely to be permanent, and that it resulted in her "being totally incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself."

¶30    In ordering Clara's protective placement, the circuit court reviewed each statutory element and it properly relied on Albrecht's testimony, the comprehensive evaluation, and its prior guardianship order. Clara does not argue that the court's findings are clearly erroneous. Under the unique facts of this case, we conclude that there was no requirement that a medical professional provide testimony in support of the petition for Clara's protective placement.

## II. Due process

¶31    Clara argues that "[b]ecause the essentially [sic] medical question of whether [Clara] was in need of protective placement was decided without the input of a medical professional—and without [Clara's] ability to cross-examine the medical professional—the protective placement order violates [Clara's] due process rights." She asserts as in **Therese B.**, Albrecht was merely a conduit for the medical opinion of others, and she claims that the only evidence related to her medical condition was Albrecht's hearsay statement that she had parasitosis and possibly some kind of Alzheimer-related dementia. Clara further asserts that because no medical professional testified, she was denied "her statutory right to cross-examine on the nature of the alleged diagnoses, whether they required residential care, the extent to which they were the cause of her inability to care for herself independently and whether they were permanent or likely to be permanent."

¶32     Clara correctly notes that in ***Therese B.***, our supreme court held that when an expert witness who had not personally examined Therese was used as a conduit for the opinions of another examining professional, Therese was deprived of the opportunity to cross-examine that professional in order to "adequately probe the professional's qualifications, the facts underlying the opinion and the method undertaken to reach the opinion." ***Therese B.***, 267 Wis. 2d 310, ¶13.   Again, however, Clara ignores the fact that the circuit court had before it the records from Clara's guardianship action—including Dr. Starr's report and its determination and order, which were filed within the twelve-month statutory deadline. *See* WIS. STAT. § 55.075(3).

¶33     Clara nevertheless contends that the circuit court could not rely upon Dr. Starr's report in making its findings and order in the protective placement action because the court admitted that report only for the purposes of the guardianship action.  She asserts that she did not stipulate to the report's admission in the protective placement matter, and Clara further contends that it was hearsay.

¶34     Even if we assume, without deciding, that the circuit court could not properly consider Dr. Starr's report in the context of this protective placement action, Clara fails to provide any authority prohibiting the court from taking judicial notice of the determination and guardianship order.  As noted above, the court's findings and order in the guardianship matter clearly addressed the findings that Clara contends must be based upon medical testimony in this matter.

¶35     In addition, the County responds that, as Clara noted in her brief, pursuant to WIS. STAT. § 55.10(4), she had the "right to cross-examine witnesses, including any person making an evaluation or review under [WIS. STAT. §] 55.11." *See* § 55.10(4)(c).  The County argues that Clara was afforded that right—namely,

she had the opportunity to cross-examine Albrecht, the author of the comprehensive evaluation, and she did so. Clara was also entitled to present witnesses at the hearing, and she could have called Dr. Starr. Instead, she chose to leave the evidence in the record unrefuted. We therefore conclude that Clara's due process rights were not violated in the protective placement proceedings.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.