PER CURIAM.
¶ 1 Derrick Bradley appeals a judgment of conviction, entered upon a jury's guilty verdicts, for two counts of first-degree recklessly endangering safety while using a dangerous weapon, as a repeater; and a single count of firearm possession by a felon, as a repeater. Bradley also appeals an order denying his postconviction motion. He raises various claims of ineffective assistance of counsel and further contends his Confrontation Clause rights were violated by the admission of hearsay testimony that a firearm belonged to him. Bradley also argues he was sentenced based upon inaccurate information. We reject these arguments and affirm.
BACKGROUND
¶ 2 The State filed an Information containing the three charges for which Bradley was ultimately convicted. Following a three-day jury trial, the jury returned guilty verdicts on all counts. The circuit court sentenced Bradley to concurrent ten-year prison terms on the two recklessly endangering safety counts, each consisting of five years' initial confinement and five years' extended supervision. On the firearm possession by a felon count, the court also sentenced Bradley to a ten-year term, consisting of five years' initial confinement and five years' extended supervision, to be served consecutive to the other sentences.
¶ 3 The evidence at trial established that on January 13, 2013, Christine and Beverly, as well as numerous children and relatives, were present in Beverly's apartment on Erie Street in Racine.[1] A man Christine knew as "DL" came to the apartment door with a group of people and asked for her son, whom he accused of stealing an iPhone. Christine refused to let "DL" speak to her son. The man became agitated in response to one of Christine's comments and pulled a handgun from his jacket. He racked the handgun slide, pointed the gun at Christine and Beverly, and said, "I'll shoot you bitches." They closed the door and called the police.
¶ 4 Officer Stephen Mueller responded to the scene and discovered that the person with the firearm had already left the apartment. Christine and Beverly provided Mueller with a description of the gun, as well as a description of the man and the apartment number in a nearby building where they believed he resided. Mueller ascertained that Bradley resided in that apartment and matched the suspect's description. Both Christine and Beverly identified Bradley as the perpetrator from a photographic lineup.
¶ 5 Mueller obtained the recordings from hallway cameras at the apartment building where the incident occurred.[2] At trial, Mueller identified Bradley as one of the individuals in a video. Mueller testified that in the video, Bradley could be seen wearing "almost like a high school letterman's jacket." Mueller testified he could not identify the individuals in a second recording, but that there appeared to be a person wearing a jacket similar to the one Bradley was wearing in the first recording. According to Mueller, Bradley could be seen on one of the video recordings "pull[ing] his arm up from his side and point[ing] it out forward into the apartment hallway" in a motion consistent with Christine's and Beverly's accounts of the firearm incident. During deliberations, the jury sent several questions to the circuit court, including multiple requests to view the hallway camera recordings at various speeds. These requests were granted.
¶ 6 Darryl Harper testified for the State and said that he knew Bradley and that Bradley had gone by the name "DL." Harper testified he accompanied Bradley to some apartments in an attempt to retrieve a stolen phone. Harper acknowledged Bradley had "upped his gun" and pointed it at the occupants of one of the apartments. Harper testified Bradley later wrapped the gun in a jacket and placed it in the storage room of Harper's apartment.
¶ 7 Officer Brian Wall testified he later recovered the firearm and jacket while responding to a separate fraud complaint from Harper's girlfriend. The girlfriend had told Wall that the gun belonged to Bradley "and that he had been possibly involved in several crimes." The jacket appeared to be the same one the perpetrator was wearing on the hallway recordings. Bradley was determined to be the major contributor of DNA found on the jacket, but police were unable to recover any fingerprint or DNA evidence from the weapon itself.
¶ 8 Bradley filed a postconviction motion seeking a new trial. As grounds, the motion alleged that: (1) the circuit court erroneously admitted improper opinion testimony when Mueller testified he could see Bradley on the hallway camera recordings; (2) Bradley received ineffective assistance of trial counsel as a result of his attorney's failure to impeach Harper by eliciting the nature of his prior convictions; (3) Bradley received ineffective assistance of counsel when his attorney made statements at closing argument essentially conceding that Bradley had possessed a firearm; (4) the court erroneously admitted hearsay testimony in violation of Bradley's Confrontation Clause rights when Wall testified that Harper's girlfriend told him the gun belonged to Bradley; and (5) the sentencing court relied on inaccurate information regarding a dismissed firearm possession charge against Bradley from 2011.
¶ 9 Following an evidentiary hearing at which only Bradley's trial counsel testified, the circuit court denied Bradley's motion for postconviction relief. Bradley now appeals. Additional facts will be discussed below as necessary.
DISCUSSION
¶ 10 Bradley renews his postconviction arguments, first asserting that the circuit court impermissibly allowed Mueller to testify about what he saw on the hallway recordings. In particular, Bradley argues it was error for Mueller to testify as to his identification of Bradley on one of the videos and as to his description of the movements Bradley was making in the hallway. However, it is unclear whether Bradley's argument is one of ineffective assistance of trial counsel or whether it concerns the merits of the circuit court's evidentiary decision.[3] Regardless, we reject the argument in either form and conclude Bradley is not entitled to a new trial on this basis.
¶ 11 To demonstrate ineffective assistance of counsel, Bradley must show that his attorney performed deficiently and that the deficiency prejudiced his defense. See State v. Breitzman , 2017 WI 100, ¶ 37, 378 Wis. 2d 431, 904 N.W.2d 93, cert. denied , 138 S. Ct. 1599 (2018). A defendant proves deficient performance by showing that the attorney's representation fell below an objective standard of reasonableness. Id. , ¶ 38. A defendant proves prejudice by demonstrating a reasonable probability that, but for the attorney's errors, the result of the proceeding would have been different. Id. , ¶ 39; see also State v. Sholar , 2018 WI 53, ¶¶ 33-34, 381 Wis. 2d 560, 912 N.W.2d 89. A circuit court's findings of historical facts are reviewed using the "clearly erroneous" standard, while the ultimate question of whether the attorney was ineffective is a question of law that we review de novo. Breitzman , 378 Wis. 2d 431, ¶¶ 37-39.
¶ 12 Here, Bradley has not demonstrated his attorney performed deficiently. His trial counsel did, in fact, interpose an objection to the State's question asking Mueller to "describe generally what [he] saw when [he] looked at these videos[.]" Trial counsel argued that Mueller's "opinion of what's on the video is irrelevant," and that the recordings spoke for themselves. The circuit court sustained the objection and instructed all present, including the jury, that the "video will speak for itself." Nonetheless, the State further questioned Mueller regarding the recording's contents, and he provided the testimony that Bradley now challenges.
¶ 13 At the postconviction hearing, Bradley's trial counsel testified he did not interpose an additional objection to Mueller's testimony because he "didn't want to draw additional attention to the testimony of the investigator. The jury had heard that the objection was sustained...." Counsel's decision not to highlight the testimony by raising an additional objection was a reasonable trial strategy under the circumstances, which we will not second guess on appeal. See id. , ¶ 65.
¶ 14 We also conclude Bradley has failed to demonstrate he suffered any prejudice stemming from Mueller's testimony. His testimony was such that he did not add anything material to the recording. Mueller said that Bradley could be seen in a jacket and that he made arm motions in a manner consistent with the victims' descriptions of the incident. Mueller did not testify that Bradley had a gun, that he could be seen raising a gun, or that he could be seen pointing it at the victims. Even if Mueller's testimony could be viewed as impermissible, the circuit court sustained trial counsel's initial objection, and the jury was instructed that the recordings would speak for themselves. Thereafter, the jury repeatedly requested to view the recordings while deliberating. We presume the jury followed the instructions given to it, see State v. Truax , 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989), and the jury's subsequent requests to view the recordings suggest that the jury in fact did so.
¶ 15 For similar reasons, we also conclude the State has demonstrated that any evidentiary error pertaining to Mueller's testimony about the recordings' contents was harmless. The harmless error rule prohibits reversal in criminal cases for errors that do not affect the substantial rights of a defendant. State v. Nelson , 2014 WI 70, ¶ 29, 355 Wis. 2d 722, 849 N.W.2d 317. Again, the challenged testimony did not add anything material to the recordings, the jury was instructed that the recordings would speak for themselves, and there is nothing in the record suggesting it failed to follow that instruction. The admission of the challenged testimony therefore did not affect Bradley's substantial rights.
¶ 16 Next, Bradley contends his attorney was constitutionally ineffective for failing to impeach Harper by questioning him regarding the nature of his prior convictions. Outside the jury's presence, Harper was asked about his criminal record. The State elicited testimony demonstrating Harper had four convictions, and two additional convictions were revealed by the defense. Thus, in accordance with Wisconsin's "counting rule," see State v. Midell , 39 Wis. 2d 733, 738-39, 159 N.W.2d 614 (1968), the defense was permitted to elicit as impeachment evidence the fact that Harper had six prior criminal convictions.
¶ 17 The jury returned to the courtroom and, after other witnesses had testified, Harper was called to the stand. During cross-examination by Bradley's counsel, he was asked how many times he had been convicted of a crime. Harper responded, "Like four or six, about four, four." Bradley's counsel asked for clarification of the number, and Harper again responded, "four." Trial counsel asked no further questions about the number or nature of Harper's convictions.
¶ 18 Bradley argues his trial counsel should have further impeached Harper's credibility by questioning him about the nature of his criminal convictions. At the postconviction hearing, trial counsel acknowledged that criminal convictions can impact witness credibility, "especially if somebody has a conviction for providing false evidence or making a false police report or some sort of crime like that." Trial counsel further agreed that Harper had testified incorrectly about the number of his convictions, and this error would have permitted counsel to inquire into the nature of the convictions. However, trial counsel elected not to inquire further because none of the convictions involved dishonesty or other crimes that would have materially impacted Harper's credibility.[4] Trial counsel stated that, at the time, he "thought the fact that [Harper] couldn't even remember the number of prior convictions he had made himself look like he was not a credible witness."
¶ 19 There is no basis to conclude Bradley's trial counsel was deficient with respect to his handling of Harper's conviction record. His decision to use Harper's own inconsistent answers regarding the number of his prior convictions as impeachment evidence was reasonable, particularly in light of the fact that none of Harper's convictions involved dishonesty. Rather, in closing arguments trial counsel mocked Harper's inconsistent answers, arguing that Harper could not be believed in part because he "seems to have lost track of the number of times he's been convicted of a crime." Trial counsel's decision to emphasize Harper's poor memory of the number of his crimes rather than inquiring into the types of his crimes was a reasonable strategic choice that we will not second guess. See State v. Domke , 2011 WI 95, ¶ 49, 337 Wis. 2d 268, 805 N.W.2d 364.
¶ 20 Bradley's final allegation of ineffective assistance of counsel concerns his closing argument. Trial counsel's closing argument portrayed the State's witnesses as liars. Trial counsel argued that even if Bradley had pulled out a gun, his arm movements were inconsistent with the victims' assertion that he had loaded a bullet in the chamber. Trial counsel also argued that Bradley did not point the gun at the victims while it was loaded and that the gun was never discharged. Defense counsel leveraged these factual assertions into an argument that Bradley's conduct did not create a great risk of death or great bodily harm, nor did it evidence an utter disregard for human life, both of which are elements of first-degree reckless endangerment. See WIS. STAT. § 941.30(1). Counsel did not affirmatively dispute that Bradley had possessed a firearm.
¶ 21 Bradley is correct that his trial counsel's argument was such that it could have been perceived as conceding he was a felon in possession of a firearm.[5] However, it is not deficient performance for a defense attorney to concede the overwhelming weight of the evidence on a lesser count in an attempt to obtain an acquittal on the more serious charges. State v. Gordon , 2003 WI 69, ¶ 26, 262 Wis. 2d 380, 663 N.W.2d 765. At the postconviction hearing, trial counsel testified that he and Bradley had discussed the fact that the evidence was overwhelming: multiple witnesses had testified they saw Bradley with a gun, and counsel stated it was "clear on the video that he was pulling something out of his pocket and pointing it and I thought I would lose a lot of credibility with the jury if I was arguing ... that there was no gun even present." Based on the evidence, Bradley agreed, in consultation with his trial counsel, that they should argue for second-degree convictions on the recklessly endangering safety counts. There is no basis to conclude trial counsel performed deficiently based on his closing arguments.
¶ 22 Next, Bradley asserts his confrontation rights were violated by the admission of hearsay evidence regarding what Harper's girlfriend told officer Wall.[6] The Confrontation Clause guarantees the accused the right to confront the witnesses against him or her. See State v. Zamzow , 2017 WI 29, ¶ 11, 374 Wis. 2d 220, 892 N.W.2d 637, cert. denied , 138 S. Ct. 501 (2017). Ordinarily, we review a circuit court's evidentiary decision under the erroneous exercise of discretion standard. Id. , ¶ 10. Whether the admission of evidence violates the defendant's Confrontation Clause rights presents a question of law that we review de novo. Id.
¶ 23 At trial, Bradley's counsel objected on hearsay grounds after the prosecutor asked Wall what Harper's girlfriend had told him about "contraband in her storage locker." The prosecutor argued the statement was not being offered for the truth of the matter asserted, but rather to show the next steps in the investigation-that is, why Wall went to the storage locker. The circuit court agreed with the State and overruled the objection following an off-the-record sidebar discussion. Wall then testified that the girlfriend had told him that Harper had hidden a firearm in the storage locker. They proceeded to the locker, where Wall discovered a handgun wrapped in a jacket. Later, Wall testified that when he seized the firearm, Harper's girlfriend said it had actually been hidden by Bradley, who had possibly been involved in some crimes. Wall did not seize the jacket immediately because he believed it belonged to Harper, but he later realized its significance after contacting Mueller and returned to collect it.
¶ 24 Without citation to the record, Bradley contends that the girlfriend's statements could not have been offered for the sole purpose of showing why Wall further investigated Bradley, because Wall had already made up his mind that Bradley was the suspect in the hallway incident. The record simply does not support this assertion. Wall was responding to a fraud complaint from Harper's girlfriend, who said Harper had taken out a payday loan in her name. Only after the girlfriend mentioned Bradley's name did Wall contact Mueller, who was investigating the hallway incident.
¶ 25 In any event, the circuit court's overruling of Bradley's hearsay objection was a proper exercise of discretion. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." WIS. STAT. § 908.01(3). The court here reasoned that the girlfriend's statements were not hearsay because they were not offered to prove that the gun belonged to Bradley, but rather to show why Wall seized the gun, looked up Bradley's criminal record, and contacted Mueller. The court's determination was a reasonable one based upon the evidence and law, and we will not overturn it on appeal. See State v. Avery , 2013 WI 13, ¶ 23, 345 Wis. 2d 407, 826 N.W.2d 60.
¶ 26 Bradley focuses on the Confrontation Clause test for "testimonial" hearsay evidence, observing that the admissibility of such evidence turns on the witness's unavailability and a prior opportunity for cross-examination. Having concluded that the circuit court properly exercised its discretion in determining the evidence was not hearsay, we need not consider whether Harper's girlfriend's statement satisfied those Confrontation Clause rules. Though the protections of the Confrontation Clause may extend further than the rules of evidence, see Crawford v. Washington , 541 U.S. 36, 51 (2004), Bradley does not adequately develop such an argument beyond his general assertions that Harper's girlfriend's statements were "testimonial" in nature because she should have reasonably anticipated they would be used in a subsequent trial. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (declining to review insufficiently briefed arguments that are supported only by general statements). Regardless, any Confrontation Clause error that resulted from the admission of Wall's testimony was harmless. See State v. Hale , 2005 WI 7, ¶ 59, 277 Wis. 2d 593, 691 N.W.2d 637. Harper had already offered firsthand testimony that Bradley had placed the gun and jacket in Harper's storage locker.
¶ 27 Finally, Bradley claims he was sentenced based upon inaccurate information. Bradley's presentence investigation report (PSI), on page four, contained a reference to an offense on March 19, 2011, in which he "stole a gun and a holster ... and was subsequently in the possession of a firearm as a convicted felon." Bradley contends the PSI was inaccurate because it failed to reflect that the charges stemming from that incident were ultimately dismissed on a prosecutor's motion on or about June 30, 2011.
¶ 28 A defendant has a due process right to be sentenced based upon accurate information. State v. Tiepelman , 2006 WI 66, ¶ 9, 291 Wis. 2d 179, 717 N.W.2d 1. To obtain resentencing on this basis, the defendant must show by clear and convincing evidence both that the information was inaccurate and that the sentencing court actually relied on the inaccurate information when fashioning the sentence. Id. , ¶ 17. Whether a defendant has been denied a due process right is a constitutional issue that this court reviews de novo. Id. , ¶ 9.
¶ 29 Here, Bradley has failed to demonstrate the sentencing court actually relied on any allegedly inaccurate information. The court mentioned that Bradley had prior criminal convictions as "set forth in pages three through five of the PSI." However, although the court emphasized that his history included numerous "assaultive crimes" and that he had pending charges for battery, bodily harm and child abuse, the court did not specifically mention Bradley's 2011 firearm possession charge. The court spoke generally about Bradley's propensity to continue arming himself despite knowing he was a convicted felon, as well as his continuing to commit new crimes. The sentencing transcript amply supports the circuit court's determination at the postconviction hearing that the court did not specifically rely on the fact of Bradley's 2011 charge when fashioning its sentence, but rather it focused on the totality of the evidence regarding Bradley's character and prior record in finding that he was a danger to the public.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Pursuant to the policy underlying Wis. Stat. Rule 809.86 (2015-16), we use pseudonyms to refer to the victims. All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The recordings are not in the appellate record.

Bradley's brief-in-chief appears to argue the merits of the circuit court's evidentiary decision. The State's response brief addresses the court's evidentiary decision under the ineffective assistance of counsel rubric. Bradley's reply brief then adopts the ineffective assistance standards to respond. Because Bradley appears to assume, at least in his brief-in-chief, that any objection was adequately preserved, we elect to address both the merits of the decision and counsel's failure to interpose a continuing objection.

According to the postconviction hearing testimony, Harper's prior convictions, all of which occurred in Illinois, were for battery, disorderly conduct, bail jumping and violating an order for protection.

At the postconviction hearing, Bradley's trial counsel correctly observed that he had not affirmatively said during closing arguments that Bradley was conceding he possessed a firearm. In this way, trial counsel's argument did not foreclose the jury from acquitting Bradley of all charges if it did not believe Bradley was present at the scene or that he possessed a firearm, even if counsel's argument was generally incompatible with an acquittal on the firearm possession charge. The subtlety of the "concession" in this case informs our conclusion that trial counsel did not perform deficiently.

The State asserts Bradley forfeited this argument by failing to raise it in the circuit court. To the contrary, Bradley's postconviction motion brief clearly raised a Confrontation Clause challenge to Wall's testimony. We note, however, that Bradley failed to frame his argument in the context of ineffective assistance of counsel. Nonetheless, because Bradley did not raise the objection at trial, the only appellate review available to him is through the ineffective assistance of counsel framework. See State v. Pinno , 2014 WI 74, ¶¶ 81-82, 356 Wis. 2d 106, 850 N.W.2d 207. Because we reject Bradley's Confrontation Clause argument on the merits, we also necessarily reject Bradley's assertion that his trial counsel was ineffective for failing to raise such an argument at trial.