# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE         :
                            :       ID No. 1910010939
           v.                   :       In and For Kent County
                            :
ROY KOLACO,               :
                            :
        Defendant.        :

## OPINION

Submitted: December 8, 2020
Decided:  December 14, 2020

Kevin Smith, Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the State*.

Stephanie Blaisdell, Esquire, Dover, Delaware, *Attorney for the Defendant.*

**Clark, J.**

Officers from the Department of Probation and Parole ("P & P") seized evidence from Probationer Roy Kolaco's residence in October 2019. Mr. Kolaco has remained incarcerated while awaiting trial on new drug dealing and weapons charges since the day of that search and seizure. In this motion, he challenges P & P's administrative search and seeks to suppress the evidence they seized.

The Chief Justice of the Delaware Supreme Court issued a series of emergency orders that permit all civil and criminal hearings (other than jury trials) to proceed virtually during the Covid-19 pandemic. While incarcerated, Mr. Kolaco could not attend his hearing at the courthouse. He nevertheless objected to attending the hearing virtually. His objection raised an important procedural issue of first impression in Delaware: namely, whether in a judicial emergency, the Court must continue a pre-trial evidentiary virtual hearing on the sole basis of the defendant's demand to appear physically in court for the hearing.

In arguing that his consent is necessary, Mr. Kolaco contends that a portion of Delaware's Judicial Emergency Act,[1] and the Chief Justice's orders issued in reliance on that Act (hereinafter referred to in the singular as "Emergency Order"), are unconstitutional. Mr. Kolaco and the deputy attorney general representing the State[2] argued that proceeding virtually, without his consent, violated his constitutional rights. For the reasons discussed below, it did not.

After denying Mr. Kolaco's continuance request, the Court held an evidentiary hearing on his motion to suppress. In that hearing, the State did not justify the warrantless search of his residence. Namely, the record evidence did not demonstrate that P & P substantially complied with the procedure necessary to

---

[1] 10 *Del. C*. ch. 20.

[2] It is not clear how the State would have standing to raise a due process challenge on behalf of the defendant or why it challenges the constitutionality of the General Assembly's duly enacted statute. In any event, the Court has considered the persuasive authority provided by the State in reaching its decision.

justify the administrative search.  As a result, Mr. Kolaco's motion to suppress must be **GRANTED.**

## I.      The Emergency Order, as permitted by the Act, authorized Mr. Kolaco's virtual appearance at his suppression hearing; the Court's process included sufficient safeguards to protect his common law and constitutional rights.

The Court held a prehearing conference prior to Mr. Kolaco's motion to suppress.  There, it explained the reasons for overruling Mr. Kolaco's objection and for denying his request that it continue the November 20, 2020 hearing.  Because of the novelty of the issue and the pandemic's broad effect on the criminal case management process, the Court more fully explains its reasoning in this written decision.

The reasons were threefold. First, mandatory authority identifies a suppression hearing as a court event that does not require a defendant's presence.  Accordingly, any impact caused by virtual participation would be harmless.  Second, the Emergency Order authorizes the Court to conduct pretrial hearings virtually during the emergency.  Given the process and safeguards used by the Court, applying the Emergency Order's authorization to Mr. Kolaco's hearing did not violate his constitutional rights, even if he had the right to be present at the hearing.  Third, the pandemic creates an unprecedented judicial emergency.  This emergency has severely impacted Delaware's criminal case management process.  To date, jury trials have remained unavailable for incarcerated defendants for nine months.  Given current conditions, this will likely continue for some time.[3]  Every pretrial matter

---

[3] *See* Jay Cannon, *Pandemic Fallout Halts Jury Trials in Some States*, News J., Dec. 9, 2020, at A14. (discussing (1) the impact of the delay in jury trials on the criminal case management process in many states; (2) recognizing that the enormous backlog will continue into 2021 and beyond;

that the Court cannot virtually accommodate now will impose a significant opportunity cost upon other defendants' speedy trial rights and the Court's case management process when jury trials resume. The Court must consider this opportunity cost when deciding a continuance request that a defendant bases solely upon an objection to appearing virtually.

## A. Relevant Procedural Background Regarding Defendant's Objection to Proceed

The State charged Mr. Kolaco with felony firearm and drug charges after P & P administratively searched his residence on October 17, 2019.[4] The Court then committed Mr. Kolaco in default of $26,000 secured bail. He remains incarcerated after 422 days.

Soon after the pandemic's onset, the Chief Justice issued his first judicial emergency order on March 13, 2020.[5] Shortly thereafter, the Department of Correction (hereinafter "DOC" or "Correction") ceased transporting incarcerated defendants to the State's courthouses. Conditions since early March have prevented a single incarcerated defendant's trial in Delaware. Over the past nine months, the backlog of criminal filings continues to expand with no relief in sight.

In October 2020, the courts briefly entered Phase III of the Court's Reopening Plan.[6] At that point, for the first time since March, the plan permitted limited transportation of inmates to the State's courthouses. During that period, the Superior Court sentenced only several incarcerated defendants statewide; DOC transported

---

and (3) indicating that some states have already announced plans to resume jury trials *no earlier than* March 2021).

[4] The State indicted Mr. Kolaco for the following offenses: Possession of a Firearm by a Person Prohibited, Drug Dealing, Aggravated Possession Tier 1, Receiving a Stolen Firearm, and for a civil violation for Possession of Marijuana.

[5] Admin. Order Decl. Jud. Emergency (Del. Mar. 13, 2020).

[6] Admin. Order No. 11, ¶ 3 (Del. Oct. 2, 2020).

inmates to the courthouses for these limited sentencings only. Those sentencings involved cases that had otherwise concluded before the start of the pandemic.

While in Phase III, the Superior Court scheduled jury trials for incarcerated defendants to resume on December 1, 2020.[7] Those matters included Mr. Kolaco's case. The Court had scheduled his suppression hearing in advance of the trial. It did so because both parties represented that resolving the pending suppression motion would be necessary before (1) the trial could proceed or (2) they could otherwise resolve it by plea or dismissal.

Before the trial, however, the courts reverted to Phase II.[8] At that point, Correction again ceased transporting inmates for physical court appearances. Accordingly, DOC again remains unable to transport incarcerated defendants to the courthouses for jury trials, bench trials, sentencings, or pretrial evidentiary hearings.

Throughout the pandemic, the State's courts, including this Court, have performed thousands of virtual proceedings thanks to modern audiovisual technology. In the civil context, Family Court hearings are nearly all virtual. The Delaware Supreme Court continues with a full oral argument schedule that it handles virtually. Delaware's Court of Chancery remains open for business through virtual and hybrid hearings and trials. The Justice of the Peace Court accommodates the largest volume of cases in Delaware's court system and it has also expanded its audiovisual capacity. The Superior Court and the Court of Common Pleas continue to conduct preliminary hearings, violation of probation hearings, civil and criminal oral arguments, bail reviews, civil bench trials, case reviews, final case reviews, and limited sentencings using this same technology.

---

[7] The Court reopened for nonincarcerated defendants' jury trials, however, in the month of October. Those also ceased when the courts returned to Phase II.

[8] Admin. Order No. 13 (Del. Nov. 16, 2020).

Given this backdrop, jury trials have nevertheless ceased. In the criminal context, the federal and state constitutional rights to a jury trial are among the most sacrosanct of all. In the felony criminal context, the inability to accommodate jury trials has created a once-in-a-lifetime backlog. Namely, it has all but halted felony criminal defendants' cases from moving through the system.

Moreover, before the Court can try matters (or the parties can resolve them by plea or dismissal), the Court must frequently hold pretrial evidentiary hearings. Those pretrial hearings must occur before the day of trial. When they do, they command a significant amount of courtroom time and resources -- time and resources that otherwise could accommodate jury trials. Accordingly, every pretrial matter delayed today will impose a significant opportunity cost upon court space and resources tomorrow. "Tomorrow" will be when the Court will be able to resume the jury trials for which many defendants have waited for well over a year.

In this case, both parties objected to this evidentiary hearing. Mr. Kolaco's objection has been common among defendants who await trial. Despite unprecedented case backlogs, defendants have almost universally objected to virtual pretrial evidentiary hearings. Furthermore, through much of the pandemic, the Court remained open to accommodate bench trials. Nevertheless, the parties have not consented to a single bench trial in a felony criminal matter statewide during the entire pandemic. Similarly, incarcerated defendants have consistently objected to sentencings that do not involve a quick release from custody. Other than plea bargains and sentencings in the "release from custody" context, resolutions of cases by plea have been few and far between.

In addressing Mr. Kolaco and the State's joint objection, the Court begins by recognizing a key provision in Delaware's Judicial Emergency Act (hereinafter the "Act"). Section 2008 of the Act, provides in relevant part:

[d]uring a judicial emergency, the Chief Justice is authorized to permit, by order, the use of audiovisual devices for all civil and criminal proceedings except trial by jury, whether or not such use is currently permitted by statute or court rule. Such proceedings may be conducted in the same or another county from that in which the defendant is physically located. ...[9]

Approximately ten years passed between the General Assembly's enactment of this statute and the date when the Covid-19 pandemic necessitated the Emergency Order. After the first order in the series, successive orders renewed authorization for Delaware courts to proceed virtually with criminal proceedings (other than jury trials). Most recently, the Chief Justice renewed this authorization through Administrative Order No. 13 (Nov. 16, 2020).[10] That, in turn, extended the terms of Administrative Order No. 12 (Nov. 2, 2020) which provided:

[i]n light of the continuing threat COVID-19 poses to public health, all courts in the State are authorized, to the greatest extent possible under 10 *Del. C.* § 2008, to continue to utilize audiovisual devices at their facilities and remotely to conduct proceedings (except for jury trials) for the duration of this order.[11]

At a prehearing conference, the Court addressed the parties' concerns regarding the fairness of a virtual hearing. After considering the issue, it overruled the parties' objection and invited them to suggest modifications to the process that would mitigate their concerns.[12] The Court then created a procedure designed to eliminate unfair prejudice to the parties.

---

[9] 77 Del. Laws ch. 30, § 1 (2009) (codified at 10 *Del. C.* § 2008).
[10] Admin. Order No. 13, ¶1 (Del. Nov. 16, 2020).
[11] *See* Admin. Order No. 13, ¶ 2 (Del. Nov. 16, 2020) (incorporating Admin. Order No. 12 ¶ 3's (Del. Nov. 2, 2020) requirement that all courts use audiovisual devices to conduct proceedings except for jury trials).
[12] The parties provided no suggestions at the conference or through their supplements.

The procedure included the use of three cameras in the courtroom during the hearing. Those three cameras, mounted on two mobile screens, provided mutual simultaneous viewing of defense counsel, the defendant, the prosecutor, the judge, and the testifying witnesses. The two mobile screens, set in a "V" configuration, provided simultaneous viewing of all participants. Throughout the process, DOC also provided a virtual courtroom to Mr. Kolaco. Together, this provided Mr. Kolaco an uninterrupted view of all courtroom stakeholders, and they of him.

Furthermore, before the hearing, DOC provided Mr. Kolaco and his attorney sufficient virtual pre-hearing access to one another to permit preparation for the hearing. During the hearing, the Court provided an area and mechanism for Mr. Kolaco and his attorney to communicate confidentially. Namely, the Court made available a secured room, adjacent to the courtroom, that provided live-feed access to SCI though the same audiovisual medium used in the hearing. The video application permitted defense counsel, through use of its breakout room feature,[13] to leave the courtroom, walk several feet, enter the adjacent room, and then confidentially communicate with Mr. Kolaco. Mr. Kolaco and his attorney did so on many occasions throughout the hearing.

Furthermore, the Court held a prehearing conference to tailor its process to the needs of the case. During the prehearing conference, the State indicated that it would need to offer no exhibits. Likewise, Mr. Kolaco identified no necessary exhibits for his portion of the case. As a result, there was no need to digitally exchange exhibits either in advance of or during the hearing. At the time of the hearing, the Court could accommodate live witnesses in the courtroom. The State identified two expected witnesses. It intended to produce them physically (as

---

[13] Zoom™ was the audiovisual application used by the Court during the proceedings, which allowed for private "breakout" rooms where participants could leave the main session and enter a private session to communicate confidentially.

opposed to virtually).  Mr. Kolaco identified himself as the only possible defense witness.

### B. Arguments of the Parties

Both the State and Mr. Kolaco agreed that the Emergency Order authorized the Court to hold the hearing either in a virtual or hybrid manner.  They also agreed that the Emergency Order did not require the defendant's waiver or consent.

Initially, Mr. Kolaco cited two reasons for objecting to a virtual hearing: (1) defense counsel's inability to cross-examine physically present witnesses, and (2) her inability to consult with her client during the hearing.   He later supplemented his arguments.  He further alleged that Section 2008 and the Emergency Order violated his "constitutional rights."  He did not identify what constitutional rights they allegedly violated, nor did he provide legal authority.  Finally, he contended that Section 2008 required the trial court, as opposed to the Chief Justice who issued the Emergency Order, to find a compelling case-specific reason to proceed with a virtual hearing.  In that regard, he contended that waiving his right to a speedy trial eliminated any compelling reason to go forward.

The State did not oppose Mr. Kolaco's objection and joined in his continuance request.  It argued that to force Mr. Kolaco to proceed with a virtual suppression hearing would violate his due process rights.  In support of its argument, it provided persuasive authority that addressed a defendant's right to appear at a suppression motion if the Court considers testimony and evidence.  The State also provided limited persuasive authority addressing an equally relevant question – does a defendant's virtual appearance qualify as an appearance at a suppression hearing?

## C. Discussion

The Court held Mr. Kolaco's hearing over the objection of both parties. Even absent the Emergency Order, Superior Court Criminal Rules and mandatory Delaware case authority did not prohibit the Court from doing so. Furthermore, the Emergency Order specifically authorized it. Finally, when the Court denied Mr. Kolaco's request for a continuance, it did so after considering two further relevant circumstances: the Court's confidence that it could provide a full and fair hearing to the defendant and the State, and the pandemic's unprecedented impact on the Court's criminal case management process.

**1. Superior Court rules, Delaware case law, and the United States and Delaware Constitutions do not prohibit virtual suppression hearings; the Emergency Order, issued pursuant to Section 2008, authorizes them.**

The parties agree that Section 2008 and the Emergency Order authorized this virtual hearing. Neither party argued that the Emergency Order made this process contingent upon Mr. Kolaco's consent. In the criminal context, the Emergency Order is broad and authorizes virtual proceedings in evidentiary hearings, bench trials, sentencings, violations of probation hearings, and pleas – it exempts only jury trials.

The parties contended, however, that the virtual hearing would violate Mr. Kolaco's constitutional rights. In addressing this objection, the Court begins by recognizing that a criminal defendant's right to be present at a trial or a corollary proceeding arises from three sources. Those sources include (1) a common law right of presence encapsulated by state statutes or court rules (such as Delaware Superior Court Criminal Rule 43); (2) the Due Process Clause of the Fourteenth Amendment; and (3) the right to confront witnesses as provided in the Sixth Amendment to the

United States Constitution and the Delaware Constitution.[14] Of these three sources, the parties raised only the issue of due process when challenging the Court's decision. Nevertheless, because the case law the State cited addresses all three sources, including Federal Rule of Criminal Procedure *43*,[15] and the Confrontation Clause, the Court will also address all three sources in turn.

### a. Superior Court Criminal Rule 43

Superior Court Criminal Rule 43 (a) itemizes four case events where a defendant must be present: a defendant's arraignment, a guilty plea, all stages of a trial, and sentencing.[16] Rule 43 does not define "presence."[17] Nevertheless, when examined in context with other Superior Court Criminal Rules, three of these four important events require physical presence in the courtroom. Namely, Superior Court Criminal Rule 10 exempts only arraignments from the need for a physical appearance. It permits a virtual appearance for arraignments through a closed circuit system.[18] Other than this one exception found in Rule 10(b), the Rules permit no other virtual appearances. Accordingly, when read in context, Rule 43's reference to presence refers to physical presence for guilty pleas, stages of a trial, and sentencings.

Pretrial suppression motions do not fit neatly within any of the four itemized events, however. Suppression hearings vary by nature. They sometimes involve purely legal matters such as four-corner challenges to the legality of a search warrant. Oral arguments regarding those matters fit firmly in the questions of law

---

[14] Christopher Bello, *Right of Accused to be Present at Suppression Hearing or at Other Hearing or Conference Between Court and Attorneys Concerning Evidentiary Questions*, 23 A.L.R. 4th 955 § 2 (originally published 1983) (collecting cases).

[15] In relevant part, Fed. R. Crim. P. 43 mirrors the language in Super. Ct. Crim. R. 43.

[16] *See Smolka v. State*, 147 A.3d 226, 228 (Del. 2015) (citing Super. Ct. Crim. R. 43).

[17] Super. Ct. Crim. R. 43.

[18] Super. Ct. Crim. R. 10(b).

category. Accordingly, for those matters, Rule 43(c)(3) does not require a defendant's presence, either physically or virtually.[19] On the other hand, motions seeking to suppress evidence seized after warrantless searches frequently require evidentiary hearings. Motions involving *Miranda v. Arizona*[20] issues also often require evidentiary hearings. To a lesser extent, the Court must also sometimes conduct evidentiary hearings when a defendant challenges the manner of execution of a search warrant or the truth of a sworn statement used to procure a search warrant.[21]

Independent of the issues raised by the Emergency Order, there is a split of national authority regarding a threshold issue. Namely, case law is not uniform regarding whether a defendant has a right to attend an evidentiary suppression hearing under Federal Rule of Criminal Procedure 43 or parallel state court rules.[22] Delaware Superior Court Criminal Rule 43 mirrors the federal rule in all aspects important to this motion.[23] Many jurisdictions, though certainly not all, consider a suppression motion to be a "stage of the trial" and thus fit within that category for purposes of the state and federal equivalents to Delaware Superior Court Criminal Rule 43.[24] Other jurisdictions, however, find that these evidentiary hearings are not

---

[19] *See* Super. Ct. Crim. R. 43(c)(3) (providing that presence is not required at a conference or argument upon a question of law).

[20] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[21] Super. Ct. Crim. R. 41(f).

[22] *See* Bello, *supra* note 15, § 3-5 (differentiating the impact of a defendant's absence from a suppression hearing as being not an error, harmless error, or prejudicial error).

[23] *See* Super. Ct. Crim. R. 43 (a),(c) (providing that a defendant shall be present at arraignment, time of plea, every stage of trial, and imposition of sentence); *c.f.* Fed. R. Crim. P. 43 (a)-(b) (providing that a defendant must be present at arraignment, plea, every trial stage, and sentencing).

[24] *See* e.g. *United State v. Law*, 528 F.3d 888, 904 (D.C. Cir. 2008) (observing that a defendant has the right to appear at an evidentiary suppression hearing guaranteed by the Due Process Clause but does not have the right to appear at a suppression motion that addresses only legal issues); *United States v. Johnson*, 859 F.2d 1289, 1294 (7th Cir. 1988) (finding that a defendant has the right to appear at a suppression hearing involving testimony).

a "stage of the trial" that requires a defendant's presence.[25] Most of the decisions that apply the latter approach rely upon Advisory Committee Notes to the Federal Rules of Criminal Procedure that explain that a defendant's presence is not required for any pretrial evidentiary hearing.[26]

When objecting to the hearing, Mr. Kolaco relied upon the Delaware Supreme Court's decision in *Smolka v. State*[27] for the premise that a criminal defendant has the right to insist on his or her physical presence at all suppression hearings. Rather than supporting this premise, the *Smolka* decision does the opposite. Namely, when examining Rule 43, the Delaware Supreme Court held *in the context of an evidentiary suppression hearing* that "[a]ttendance by the defendant at a suppression hearing *is not required by the Rule*."[28] Arguably, this holding alone abbreviates the necessary analysis. If a defendant has no right under Rule 43 to appear at a hearing in any manner, then the Court's decision to conduct the hearing virtually becomes immaterial. There can be no harm.

The parties raise important constitutional issues, however, that arise in a significantly different context that those raised in the *Smolka* decision. Namely, the Delaware Supreme Court addressed one discrete situation in its decision, i.e., where a defendant failed to appear at his hearing despite notice.[29] There, the Supreme Court provided instruction regarding how trial courts should balance a defendant's right to

---

[25] *See* e.g. *United States v. Burke*, 345 F.3d 416, 422-426 (6th Cir. 2003) (holding under Rule 43 a pre-trial suppression hearing is *not* a stage where the defendant must be present); *Muehleman v. State*, 503 So. 2d 310, 315 (Fla. 1987) (holding that a suppression hearing is not a stage of a trial); *United States v. Gradsky*, 434 F.2d 880, 882-83 (5th Cir. 1970) (noting that pretrial evidentiary hearings do not constitute a stage of the trial as contemplated by Federal Rule of Criminal Procedure Rule 43).

[26] *See* Fed. R. Crim. P. 43 advisory committee's note to 1944 amendment (explaining in ¶ 1 that the first sentence of the rule regarding defendant's presence at trial does not apply to hearings on motions made prior to trial).

[27] *Smolka v. State*, 147 A.3d 226 (Del. 2015).

[28] *Id*. at 228 (emphasis added).

[29] *Smolka*, 147 A.3d at 229.

seek suppression of evidence while maintaining the ability to control their dockets.[30] The Court resolved this tension by recognizing that the defendant (as opposed to counsel) had no right under Rule 43 to appear live at the hearing. That, in turn, left the Superior Court free to conduct the evidentiary hearing without him.[31]

In the *Smolka* case, however, the Supreme Court found a defendant's absence to be a waiver of *a right to appear* as opposed to a waiver of the right to seek suppression of evidence.[32] In that sense, Mr. Kolaco's situation is distinguishable from a defendant who simply refused to appear at his suppression motion despite notice. Because the parties raise important constitutional concerns not at issue in the *Smolka* case, the Court will analyze their concerns after, assuming *arguendo,* that a defendant has the right to attend an evidentiary suppression hearing if he or she demands to be present.

### b. Due Process

With regard to Mr. Kolaco's constitutional rights, the parties directly raised only due process. The Due Process Clause of the Fifth Amendment to the United States Constitution incorporated through the Fourteenth Amendment guarantees the elements of fairness in a criminal trial.[33] The right to due process also applies to pretrial matters where the presence of a defendant bears a substantial relationship to his or her opportunity to defend against the charge.[34] In terms of due process, both the United States and Delaware Constitutions require that a defendant be afforded notice, an opportunity to be heard, and the ability to cross-examine witnesses in a

---

[30] *Id*. at 232.
[31] *Id*. at 229.
[32] *Id*. at 232.
[33] *Monceaux v. State*, 51 A.3d 474, 477 (Del. 2012).
[34] *Snyder v. Com. of Mass.*, 291 U.S. 97, 105-106 (1934).

criminal proceeding.[35]  When comparing the sufficiency of a virtual appearance to a physical appearance, the question further turns on how much process is due.

Proceeding virtually provides the process due to a criminal defendant in a *pretrial* evidentiary hearing under current emergency circumstances.  The nine month-old pandemic has impacted the criminal justice case management process in nearly every jurisdiction.  Nationally since March, at least three trial courts have evaluated the use of advanced audiovisual technology in pre-trial evidentiary hearings.  All three of those decisions approved virtual hearings over the due process objections of criminal defendants.  In fact, all three courts permitted virtual hearings absent judicial emergency orders such as the one available in Delaware.

For instance, the United States District Court for the Eastern District of Kentucky issued an October 2020 decision in *United States v. Lawson.[36]*  In that case, a criminal defendant challenged the federal district court's order that he participate in his suppression hearing virtually.[37]  As in Mr. Kolaco's case, Covid-19 restrictions prohibited his physical appearance at the courthouse.  Absent a judicial emergency order, the district court first examined Federal Criminal Rule of Procedure 43.  When doing so, it recognized no mandatory authority that guaranteed a defendant's right to be physically present – or present at all – at a pretrial suppression hearing.[38]  It likewise found that a virtual hearing provided sufficient procedural due process.[39]  In fact, it found adequate due process in a hearing that provided the defendant considerably less protection that this Court offered to Mr.

---

[35] *Franco v. State*, 918 A.2d 1158, 1161 (Del. 2007).  The right to cross-examine a witness *during a trial* is also one of the rights provided by the Confrontation Clause, as discussed *infra*.

[36] *United States v. Lawson*, 2020 WL 6110969 (E.D. Ky. Oct. 16, 2020).

[37] *Id.* at *1.

[38] *Id*. at *2.

[39] *See id*. at *2-4 (reasoning that Lawson's physical presence was not required to provide due process or to comply with Rule 43 because his presence would have not made a meaningful impact to the proceeding or recommended result).

Kolaco. Namely, that court found sufficient due process notwithstanding that the defendant (1) could not have mid-hearing conferences with his attorney, and (2) had difficulty hearing part of the proceeding.[40] As to the former, the Court recognized that the defendant "has no guaranteed right to micromanage counsel's cross-examination during the hearing."[41] As to the latter, the Court emphasized that when counsel represents a defendant, the defendant cannot independently argue and present evidence apart from counsel. It found that a pretrial hearing provides due process *if counsel* can argue, present evidence, and cross-examine witnesses.[42]

The United States District Court for the District of New Mexico decided similarly in July 2020. In *United States v. Rosenschein,*[43] that court held that a virtual evidentiary suppression hearing provided the defendant all necessary protections. When upholding its decision to hold a virtual hearing where the defendant could not be physically present, it carefully examined (1) Federal Rule of Criminal Procedure 43, (2) the Confrontation Clause, and (3) the defendant's due process rights.[44] As to the issue of due process, the *Rosenschein* decision recognized that due process is a sliding scale. That scale provides for a different degree of process due at suppression hearings as opposed to trials.[45] The court further recognized that given modern audiovisual technology, "the [c]ourt will be able to see, hear, and speak to the witnesses, counsel, and Defendant, and they will be able to see, hear, and speak to the Court."[46] An audiovisual system that permitted that degree of interaction among the stakeholders satisfied the defendant's due process rights.[47]

---

[40] *Id*. at *2-3.
[41] *Id*. at *2.
[42] *Id*. (citation omitted).
[43] *United States v. Rosenschein*, 2020 WL 4227852 (D.N.M. July 23, 2020).
[44] *Id*. at *2-4.
[45] *Id*. at *4.
[46] *Id*.
[47] *Id*.

Finally, the Superior Court of Massachusetts also examined the issue of virtual suppression hearings in another pandemic-era decision. In *Commonwealth v. Masa*, the trial court overruled a defendant's objection to holding his evidentiary suppression hearing by video.[48] Of note, Massachusetts's case law provides – contrary to the *Smolka* decision – that a criminal defendant has a constitutional right to be present during a motion to suppress.[49] Notwithstanding that recognized right, the court in *Masa* found no impediment, under current emergent circumstances, to permitting both witnesses and the defendant to be remote.[50] In other words, it recognized virtual presence as "presence" for purposes of an evidentiary suppression hearing. Specifically, in analyzing the defendant's right to due process, the Court reasoned:

> due process demands that evidence be reliable in substance, not that its reliability be evaluated in a particular manner. . . . [t]he focus on reliability may not accommodate a simple, predictable, bright-line rule . . . due process is a flexible concept . . . [that] depend[s] on the circumstances of each case . . . To determine what procedures are sufficient in a given case, a court must balance 'the private interest affected, the risk of erroneous deprivation, the probative value of additional or substitute safeguards, and the governmental interest involved'.[51]

As far as the government interests involved, the Massachusetts trial court placed significant weight on the risks involved with live courtroom appearances in the pandemic. It weighed those risks in light of the procedural safeguards that new technology provided the defendant.[52]

---

[48] *Commonwealth v. Masa*, 2020 WL 4743019, *1 (Mass. Super. Aug. 10, 2020).
[49] *Id*. (citing *Com. v. Campbell*, 983 N.E.2d 1227, 1230 (Mass. App. Ct. 2013)).
[50] *Id*. at *6-7.
[51] *Id*. at *3 (citations omitted).
[52] *Id*. at *6-7.

In Delaware, the dangers of in-person matters during the pandemic are no less significant. As in the *Masa* decision, when weighed in light of the emergency circumstances at issue*,* Mr. Kolaco's virtual appearance equates to a physical appearance in a pretrial evidentiary suppression hearing. Mr. Kolaco had notice of the hearing, a full opportunity to be heard, and his attorney had the ability to cross-examine witnesses. Furthermore, in this case, Mr. Kolaco's attorney and the witnesses appeared in the same courtroom physically. Nevertheless, the process would have been no less sufficient if the hearing was virtual as to all parties. Namely, during a judicial emergency, the quality of the audiovisual platform used (and similar ones that are readily available) would have permitted counsel to cross-examine effectively the State's witnesses. A judge, not a jury is the finder of fact in such pretrial hearings. Where the platform enables the Court, the defendant, witnesses, and counsel to see and hear each other over a high quality audiovisual medium, the Court has provided a criminal defendant sufficient due process in court events other than trials.

### c. Right to Confrontation

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[53] The parties did not specifically allege that the virtual hearing violated Mr. Kolaco's Sixth Amendment right to confrontation. Nevertheless, Mr. Kolaco alleged broadly that the Court's process violated his "constitutional rights." Some of the cases the State provided discuss the Confrontation Clause's relevance to suppression hearings. Since the right to

---

[53] U.S. CONST. amend. VI.

confrontation is a fundamental right, the Court will deem the issue fairly raised and address it.

The Sixth Amendment right to confrontation applies to the states by incorporation through the Fourteenth Amendment.[54] Its emphasis on the importance of cross-examination overlaps the right to cross-examination guaranteed by the United States and Delaware Constitutions' due process clauses.[55] In this regard, the right to confrontation is more extensive in the 6th Amendment context than in the due process context (which focuses more narrowly on a right to cross-examination).[56]

This is a pretrial matter. If this were a criminal trial, the Court would need to undertake a thorough examination of the impact of a virtual hearing upon Mr. Kolaco's right to confrontation.[57] Nationally, courts have applied different standards when undertaking that analysis in the trial context. Nevertheless, most jurisdictions find that the right to confrontation guaranteed by the Sixth Amendment to the United

---

[54] *Pointer v. Texas*, 380 U.S. 400, 406 (1965).

[55] *Franco*, 918 A.2d at 1161.

[56] *See Maryland v. Craig*, 497 U.S. 836, 845-846 (1990) (explaining that **the Confrontation Clause** involves four procedural safeguards (1) in person testimony by the witness; (2) testimony under oath; (3) testimony that is subject to cross-examination; and (4) testimony where the jury can observe the witness's demeanor); *cf. Franco*, 918 A.2d at 1162 (holding that the Federal and State **Due Process Clauses** require the defendant to receive (1) notice; (2) opportunity to be heard; and (3) the ability to cross-examine witnesses in a criminal proceeding). Accordingly, the right to cross-examine a witness is protected by a defendant's due process *and* confrontation rights, but the Federal and State Confrontation Clauses protect more of what is necessary to "confront" a witness.

[57] *See Craig*, 497 U.S. 850, 855, 860 (permitting remote testimony at trial from a child abuse witness only if the trial court makes a case-specific finding of necessity by (1) holding an evidentiary hearing and (2) finding that: (a) the denial of physical confrontation is necessary to further an important public policy and (b) the reliability of the testimony is assured); *c.f. United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999) (distinguishing the *Craig* decision and finding that merely a finding of exceptional circumstances and a furtherance of the interests of justice was necessary to approve trial testimony given through a two-way closed circuit television); *but see United States v. Yates*, 438 F.3d 1307, 1315 (11th Cir. 2006) (holding that because the right to confront is compromised when confrontation occurs through an electronic medium, a trial court must fully apply the *Craig* analysis when permitting virtual testimony at trial).

States Constitution does not apply to suppression hearings.[58]  As a plurality of the United States Supreme Court recognized in its decision in *Pennsylvania v. Ritchie:*

> the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination . . .  Normally, the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses.[59]

The Delaware Supreme Court has not expressly decided this issue. Nevertheless, its reasoning in *Franco v. State*[60] strongly supports the conclusion that it would follow the large majority of jurisdictions that find the Confrontation Clause inapplicable to pretrial hearings.  In its *Franco* decision, the Court examined the issue of a defendant's right to cross-examine witnesses in a restitution hearing.  It recognized that both the United States and Delaware Constitutions provide the right of confrontation in "all criminal prosecutions."[61]  In fact, the Court recognized what is a broader right of confrontation in the Delaware Constitution:  that is, "a right . . . to meet the witnesses in their examination face to face . . . ."[62]  The Court distinguished the nature of a restitution hearing, part of the sentencing process, from

---

[58] *See e,g. State v. Zamzow*, 892 N.W.2d 637, 646  (Wis. 2017) (holding that the Confrontation Clause's protections do not apply at suppression hearings and citing numerous other jurisdictions that have decided similarly); *State v. Woinarowicz*, 720 N.W.3d 635, 641 (N.D. 2006) (concluding that the right to confront under the Sixth Amendment is a trial right and does not apply to a pretrial suppression hearing); *Ebert v. Gaetz*, 610 F.3d 404, 414 (7th Cir. 2010) (finding the right to confront was not implicated regarding an accomplice confession in a suppression hearing); *see also Rosenschein*, 2020 WL 4227852 at *3-4 (finding that the Confrontation Clause does not apply to a virtual suppression hearing).

[59] *Pennsylvania v. Ritchie*, 480 U.S. 39, 52-53 (1987) (emphasis in original).

[60] 918 A.2d 1158 (Del. 2007).

[61] *Id*. at 1161.

[62] *Id*. (citing Del. Const. art. 1, § 7).  This Court recognizes that Delaware's constitutional  right to meet an accuser "face to face" would warrant additional analysis if this matter were a trial.  The *Franco* decision demonstrates that Delaware's constitutional confrontation right applies to the same proceedings as the United States constitution's confrontation right: that is, trials where the issue of guilt or innocence is involved.  *Id.* at 1162.

20

"a trial on the issue of guilt . . . .." On that basis, it held the two confrontation clauses to be inapplicable to a restitution hearing.[63] The issue of guilt is likewise not at issue in a suppression hearing or other pretrial evidentiary hearing.

On balance, given (1) the United States Supreme Court's plurality opinion in its *Ritchie* decision, (2) the great weight of persuasive authority that finds the United States Confrontation Clause inapplicable to suppression hearings, and (3) the Delaware Supreme Court's analysis in the *Franco* decision, a virtual hearing did not impact Mr.Kolaco's right to confrontation. It did not because one did not exist in the non-trial context.

Finally, an observation regarding black letter law illustrates why constitutional confrontation rights do not arise in suppression hearings. Namely, a suppression hearing is not a proceeding where strict rules of evidence apply.[64] As a result, hearsay is fully admissible in such hearings.[65] The Confrontation Clause, in the trial context, is intended to preserve the right to challenge testimonial hearsay, even if it fits within a well-recognized hearsay exception.[66] In a hearing where hearsay is fully admissible, it follows that a right to confrontation does not apply.

### d. The Emergency Order

Until this point, the Court has addressed important collateral concerns and has not focused on the Emergency Order. The Act authorizes the Chief Justice, in

---

[63] *Id*. at 1161.

[64] *State v. Holmes*, 2015 WL 5168374, at *8 (Del. Super. Sept. 3, 2015) (citing *Schramm v. State*, 366 A.2d 1185, 1192 (Del. 1976)).

[65] *See id*. (holding that while hearsay is fully admissible in a suppression hearing, the Court's decision cannot rest on hearsay alone); *United States v. Raddatz*, 477 U.S. 667, 679 (1980) (holding that the interests at stake in suppression hearings are different than at a trial, so a court may rely on hearsay even though it would not be admissible at trial); BARBARA E. BERGMAN *et al*., WHARTON'S CRIMINAL EVIDENCE § 6.4 (15th ed.) (recognizing that "hearsay is admissible at . . . hearings on motions to suppress").

[66] *Martin v. State*, 60 A.3d 1100 (Del. 2013).

21

consultation with the Delaware Supreme Court, to amend existing (1) court rules and (2) statutes that address court processes during an ongoing emergency.[67] Given this recognition, it follows that to the extent that Rule 43's concerns reflect a common law right to physical presence, the Emergency Order *temporarily* abrogates both the Rule's requirement and any accompanying common law right.

In seeking the continuance, Mr. Kolaco challenged the Act and this Court's reliance on the Emergency Order on two further bases: he contended that the Act violates separation of powers principles, and that this Court declined to make a finding required in the Act before proceeding virtually over objection.

With regard to the separation of powers claim, Mr. Kolaco contended that the Act impermissibly abrogates the judiciary's authority to control its proceedings. He cited no authority to support that premise. Granted, separation of powers concerns may arise in certain circumstances where a legislature abrogates the responsibilities of the judiciary.[68] Here, that issue need not be addressed. Rather, in this case, the Chief Justice, in consultation with the Supreme Court, issued an Emergency Order that is consistent with the Act. Where an Emergency Order parallels legislative authorization enacted by the General Assembly, there is no conflict. Without a conflict, there is no violation of the concept of separation of powers. The Chief Justice likely has the authority to authorize virtual hearings as the head of Delaware's judiciary absent Section 2008.[69] Nevertheless, there is no conflict to resolve in this case because of the congruity between his Emergency Order and Section 2008.

---

[67] *See* § 2008 (providing that the Chief Justice, by order, can permit the use of audiovisual devices for all criminal proceedings except jury trials "whether or not such use is currently permitted by statute or court rule").

[68] *See Evans v. State*, 872 A.2d 539, 547-53 (Del. 2005) (recognizing this premise in a different context, while tracing its origin to *Marbury v. Madison*, 5 U.S. 137 (1803)).

[69] Del. Const. art. IV, § 13.

With regard to his second argument, Mr. Kolaco contends that Section 2008 requires a trial court to make certain case-specific findings before proceeding with a virtual hearing. He based this argument on the following portion of Section 2008: "[i]n the order permitting the use of audiovisual devices, the Chief Justice . . . shall provide a justification for the compelling state interest in using such devices."[70] Under this theory, Mr. Kolaco remained free to remove a compelling interest to proceed virtually by waiving his speedy trial rights. His reading of Section 2008 is incorrect, however.

Section 2008 provides that a judicial emergency order may authorize virtual hearings in criminal pretrial matters.[71] It also authorizes the Chief Justice to issue an emergency order that resolves issues of venue if a defendant participates from outside the county holding the hearing.[72] Contrary to his contention, the Act does not require a trial judge to make a specific finding before he or she applies the authority granted by the Chief Justice. Rather, the Act's plain language provides that the *Chief Justice* is to determine whether there is a compelling state interest to authorize virtual in lieu of physical hearings.[73] Here, the Chief Justice cited the compelling justifications for doing so in his Emergency Order and in each successive order. He did so directly and by incorporation.

On balance, Section 2008 lawfully authorized the Emergency Order. Furthermore, the provisions in the Emergency Order are enforceable because they independently fall within the Chief Justice's authority as head of Delaware's judicial

---

[70] 10 *Del. C.* § 2008.
[71] *See id.* (providing for "…the use of audiovisual devices for all civil and criminal proceedings except trial by jury.…").
[72] *Id.*
[73] *See id.* (providing that "…the *Chief Justice* … shall provide a justification for the compelling state interest in using such devices.") (emphasis added).

branch. The provision authorizing virtual hearings is enforceable upon the State and this criminal defendant.

**2. This unprecedented judicial emergency's impact upon the Court's criminal case management process required the Court to deny Mr. Kolaco's continuance request; the audiovisual medium and process provided Mr. Kolaco a full and fair hearing.**

The Court denied Mr. Kolaco's continuance request. When doing so, it weighed Mr. Kolaco's right to a speedy trial together with any personal prejudice caused by the delay (both of which he was willing to waive). The Court also counter-weighed society's interest in the prompt resolution of criminal cases. Namely, the Court considered the impact that delays in individual defendants' cases have upon (1) the criminal case management process as a whole, and (2) the speedy trial rights of other defendants.

The Court has a strong interest in bringing criminal cases to a prompt resolution. Its burgeoning criminal docket, without the relief valve of jury trials, will continue to burgeon. Mr. Kolaco's case does not involve an identified victim. Nevertheless, when jury trials resume, his case will likely take priority over many older cases of nonincarcerated defendants and younger cases of incarcerated defendants. Many of those cases involve violent crimes such as murders, rapes, assaults, home invasions, and burglaries. Many involve identified victims who desire and deserve closure. Finally, many incarcerated defendants have awaited trial for less than the 422 days that Mr. Kolaco has awaited trial. Delay in handling older cases, such as Mr. Kolaco's, will impact the priority of their cases, which will in turn affect their speedy trial rights while they remain incarcerated.

As of October 31, 2020, Delaware had 2,122 felony cases awaiting trial. As of that day, 564 of those defendants were incarcerated. Despite a steadily growing

backlog and the Court's willingness to accommodate criminal bench trials for several months during the pandemic, not one felony criminal defendant in the State has consented to resolve a matter by bench trial. The Court does not criticize any defendant's reluctance to do so. Every one of those defendants is presumed innocent unless proven guilty. Every one of them also has the right to a trial by jury. Nevertheless, this reality further shuts off an important relief valve that the Court could use to alleviate the backlog.

Because the conditions prohibit jury trials and the parties have not elected bench trials, the Court must look elsewhere to address the backlog. Every matter that the Court resolves virtually today will free it to focus more squarely on jury trials after the pandemic. When jury trials begin again, there will be limited courtroom space, staff, and judges to meet the need. Every pretrial hearing that remains on the Court's docket will consume court space and resources needed to provide other defendants more timely trials. The opportunity cost in waiting to hear those matters until a defendant can again be brought to the courthouse will be longer trial delay for other defendants. Such further delay will also adversely impact victims who seek justice and the criminal justice system in general.

Finally, when denying the continuance request, the Court considered the sufficiency of the process it could provide. Under *any* analysis, a suppression hearing where a court hears testimony and evidence is an important case event. A defendant deserves significant procedural and substantive protections in events that can often be dispositive to their cases. As a result, all such hearings must comport with constitutional requirements. Furthermore, because a court may hold a hearing with less than optimal procedural safeguards does not mean that it should. Here, the Court provided the fullest amount of procedural protections practical under the circumstances.

**II.** **The Court must grant the motion to suppress because the State did not substantially comply with Department of Probation and Parole Procedure 7.19.**

The Court held the hearing on November 20, 2020. At the hearing, the State presented the testimony of a Delaware State Police Officer and a P & P officer. On the record presented, the State did not meet its burden of demonstrating that P & P substantially complied with Rule 7.19 before executing the administrative search. As a result, the evidence P & P seized must be suppressed from use at trial because no warrant authorized the search.

### A. Nature of the Hearing and Applicable Standard

In a search or seizure conducted without a warrant, the burden rests on the State to prove by a preponderance of the evidence that the search or seizure was justified.[74] In a suppression hearing, the Court sits as the finder of fact, weighs the credibility of the witnesses, and determines the weight due the evidence.[75] In such a hearing, the Court does not strictly apply the rules of evidence.[76] For instance, hearsay is admissible in a suppression hearing.[77]

P & P may arrest and search a probationer and his or her effects pursuant to an administrative arrest and search.[78] Although sometimes referred to as an administrative warrant, there is no warrant involved. Rather, in the probation context, an administrative procedure, authorized in a highly regulated environment, permits a search based upon relaxed standards in light of a probationer's decreased

---

[74] *Hunter v. State*, 783 A.2d 558, 560-61 (Del. 2001).
[75] *Turner v. State*, 957 A.2d 565, 571 (Del. 2008); 2 WAYNE R. LAFAVE *et. al., Criminal Procedure* § 10.5(a) (4th ed. 2018).
[76] *Holmes*, 2015 WL 5158374 at *8.
[77] *Id.*
[78] *Sierra v. State*, 958 A.2d 825, 828 (Del. 2008).

expectation of privacy. On the other hand, while Procedure 7.19 provides for this warrant exception, it simultaneously prevents searches based upon law enforcements' unfettered discretion.

Probationers do not have the same liberties as other citizens.[79] In the probationary context, a warrantless administrative search requires reasonable articulable suspicion for the search.[80] As in other areas of search and seizure analysis, reasonable suspicion in this context turns on the totality of the circumstances.[81]

The Delaware General Assembly enacted enabling legislation that permitted P & P to adopt regulations governing the warrantless search of probationers.[82] Thereafter, the Bureau of Community Corrections promulgated Probation and Parole Procedure 7.19.[83] To justify an administrative search of a probationer's residence, the State must demonstrate that the search was reasonable and that P & P substantially complied with the requirements of Probation and Parole Procedure 7.19.[84] The Procedure provides only one exception to its requirements: exigent circumstances.[85]

## B. Findings of Fact After Hearing

The following facts are those found by the Court to a preponderance of the evidence adduced at the hearing. On October 17, 2019, an undisclosed tipster

---

[79] *Sierra*, 958 A.2d at 828.
[80] *Id.*
[81] *Id.*
[82] *See* 11 *Del. C*. § 4321(d) (providing that probation and parole officers may conduct searches of individuals under their supervision in accordance with adopted procedures).
[83] *See* Delaware Department of Corrections Bureau of Community Corrections Probation and Parole Procedure No. 7.19 (amended effective May 17, 2016) (providing the requirements that must be met in order to conduct an administrative search) [hereinafter "*DOC BCC 7.19*"].
[84] *Fuller v. State*, 844 A.2d 290, 292 (Del. 2004).
[85] *Sierra*, 958 A.2d at 829.

provided information that someone relayed to Detective Holl of the Delaware State Police. The tip foretold that Mr. Kolaco would travel in a red pickup truck to a scheduled probation visit at Kent County's probation office in Dover. As a result, Detective Holl and another State Police officer went to the parking lot at Dover's probation office and encountered the driver of a red truck. In the meantime, the detective had requested a probation officer to arrest Mr. Kolaco inside the probation office for an outstanding warrant for a prior serious traffic offense.

The individual outside the red truck showed his license to the officers and identified himself. He told the officers that he had driven "Roy" to his probation appointment in exchange for payment. Detective Holl told the individual that Mr. Kolaco would not be going home and asked the individual if Mr. Kolaco had left any property in the truck. The pickup driver took a grocery bag and a cell phone from the truck's center console and handed it to the officers. He then left the scene with the officers' consent. Upon examining the bag, the detective could tell that it contained packaged heroin because of its feel and because he could see partially through it.

Detective Holl then returned to Delaware State Police Troop 3. There, he spoke to Probation Officer McClure (hereinafter "PO McClure") about what had happened. After discussing the matter with Detective Holl, PO McClure called his supervisor. The State presented no evidence at the hearing that PO McClure completed an arrest-search checklist as required by 7.19. PO McClure did discuss Mr. Kolaco's probation violations and other criminal conduct with his supervisor before he searched Mr. Kolaco's residence, though.

In the phone conference, PO McClure relayed information to his supervisor regarding the following five incidents: (1) Mr. Kolaco's traffic violation and police chase from September 17, 2019 where Mr. Kolaco escaped; (2) a two-week old positive urine screen for marijuana conduced at a scheduled probation office

meeting; (3) two curfew violations over the previous month; (4) Mr. Kolaco's January 2019 arrest after he left his house, where the police found marijuana in his car; and (5) the police's recovery of heroin from the vehicle that transported Mr. Kolaco to the probation office on the day of the October 2019 search.

Furthermore, Mr. Kolaco had at least one probation visit *between* his alleged disregard of a police officer's signal in September 20, 2019 and a scheduled October 17, 2019 visit. P & P did not violate him for the positive drug test, curfew violations, or traffic offenses at that time. Furthermore, the State provided no evidence that Mr. Kolaco had absconded from probation or was otherwise inaccessible (other than during two missed curfews) between September 20, 2019 and his scheduled office visit on October 17, 2019. After his arrest, P & P did not violate him for the infractions that PO McClure discussed with his supervisor.

## C. Arguments of the Parties

Mr. Kolaco moves to suppress the evidence seized from his residence. He argues that the circumstances in his case are similar to those in *Culver v. State*.[86] In this regard, he contends that the State did not meet its burden of proof by demonstrating substantial compliance with Procedure 7.19. He also contends that there was no logical nexus between the alleged illegal activity and Mr. Kolaco's residence. As a result, he contends that P & P unlawfully searched his premises.

The State counters that it substantially complied with Rule 7.19's requirements.[87] It also argues that it need not establish a nexus between a

---

[86] 956 A.2d 5 (Del. 2008).

[87] After the hearing, the Court requested the State to provide a current copy of Procedure 7.19 to it, with a copy served on the Defendant. When requesting the Procedure, the Court invited the parties the opportunity to supplement their arguments in light of the Procedure's text. In its transmittal letter attaching the Procedure, the State requested "reasonable notice of the issues" that the Court felt to be raised by its request for the Procedure. Both parties had adequate notice that P & P's compliance with Procedure 7.19 was at issue in a hearing on a motion to suppress an

probationer's illegal activity and the area to be searched – in this case the probationer's residence.

## D. Discussion

An administrative search is an exception to the warrant requirement.[88]  P & P's procedure requires that the *probation officer* who seeks to justify a search must use Form #506, an Arrest-Search Checklist.[89]  Namely, it provides that the Arrest-Search Checklist "*is to be used for all arrests and searches* in the community, unless exigent circumstances exist forcing the Officer into action."[90]  The Procedure also requires the searching officer to hold a conference with his or her supervisor before the search.  In that regard, it requires that the officer applying for the search to consider the following factors and discuss them with a supervisor beforehand:

1. The officer has knowledge or sufficient reason to believe the offender possesses contraband;
2. The officer has knowledge or sufficient reason to believe the offender is in violation of probation or parole;
3. There is information from a reliable informant indicating the offender possesses contraband or is violating the law;
4. The information from the informant is corroborated; and
5. Approval for the search has been obtained from a Supervisor, a Manager, or the Director.  If approval is not obtained prior to the search, list the exigent circumstances on the Search Checklist requiring you to proceed with the search.[91]

Here, no exigent circumstances were alleged.   For two reasons, P & P did not substantially comply with Procedure 7.19 before searching Mr. Kolaco's

---

administrative search justified by that Procedure.  Furthermore, both parties had the opportunity to provide supplemental argument but did not.

[88] *Sierra*, 958 A.2d at 828.

[89] *DOC BCC 7.19* § V & VII (A)(1).

[90] *Id.* § VII (A)(1).

[91] *Id.* § VII (E).

residence. First, Procedure 7.19 expressly requires P & P to execute a presearch checklist before any search, absent exigent circumstances.[92] The State offered no evidence that P & P did. Second, the State presented no evidence that a director, manager, or supervisor approved the search.

With regard to the absence of a checklist, in a 2007 decision in *State v. Harris*, this Court held that where P & P failed to complete a checklist required by Procedure 7.19, it did not demonstrate substantial compliance with that procedure.[93] In the *Harris* decision, the State produced an unsigned checklist and some evidence that the officer had completed it.[94] Other evidence contradicted that fact and the Court did not find the State's position to be credible. As a result, the Court found that P & P had never completed one. [95]

Here, the State provided less evidence on that issue than the State offered in the *Harris* case. In fact, it offered no evidence that PO McClure or any other P & P officer completed the checklist. When a procedure necessary to authorize an administrative search specifically requires a probation officer to use a specific "Arrest-Search Checklist form," and the State does not present evidence that the officer completed the checklist, the State has not demonstrated substantial compliance with the Procedure. [96]

---

[92] *DOC BCC 7.19* § VII (A).

[93] *State v. Harris*, 2007 WL 642069, at *2 (Del. Super. Ct. Feb. 27, 2007).

[94] *Id*. at *1-2.

[95] *Id*. at *2.

[96] When making this factual finding, the Court recognizes that Mr. Kolaco attached an exhibit to his motion, entitled an "Arrest/Incident" report. That document provided the following: "Arrest/Search Checklist Completed: Yes." Def. Motion Ex. "B". The State, however, did not introduce that document into evidence. Even considering that "yes" answer, in the absence of either (1) sworn testimony at the hearing that PO McClure completed the checklist or (2) admission of the checklist into evidence at the suppression hearing, the Court could not find, more likely than not, that P & P completed the checklist in this case.

Independent of a lack of evidence regarding a completed checklist, the State also provided no evidence that a supervisor, manager, or the Director of Probation and Parole approved the search. The fifth factor quoted above expressly requires such approval prior to an administrative search.[97] Because no neutral magistrate reviews P & P's application for an administrative search, a multi-layered approval of a planned search is indispensable under Procedure 7.19. Absent credible evidence that a director, manager, or supervisor approved the search, there cannot be substantial compliance with Procedure 7.19 unless exigent circumstances justified the search.[98]

Here, PO McClure's testimony demonstrated that he spoke to a supervisor regarding the potential need for the search. That alone does not demonstrate that a supervisor approved it. The State bears the burden of demonstrating its compliance with its own procedure. Because it is the State's burden, the Court is not free to find supervisor approval absent any evidence supporting that fact. As a result, all evidence recovered from the search of Mr. Kolaco's residence must be suppressed from use at trial.

## III. Conclusion

For the reasons discussed, the parties' objections to proceeding with this hybrid virtual hearing were appropriately overruled. The Court also appropriately denied Defendant Kolaco's request for a continuance. After a hearing, the Court finds that the administrative search of his residence did not substantially comply with Procedure 7.19. As a result, his motion to suppress must be **GRANTED**.

---

[97] *DOC BCC 7.19* § VII (A)(6)(a)(5).

[98] *See Aiken v. State*, 2017 WL 4792211, at *5 (Del. Oct. 23, 2017) (approving the Superior Court's holding in *State v. Harris*, where the Superior Court held the search to be unlawful absent credible evidence that the probation officer received supervisor approval).